Raul Percira GONCALVES,
Petitioner, Appellant,

v.

Janet RENO, Attorney General of the United States; Dorris Meissner, Commissioner of the Immigration and Naturalization Service; Steve Farquharson, INS District Director, Boston District; Department of Justice; and Immigration and Naturalization Service, Respondents, Appellees.

No. 97–1953.

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1998.

Decided May 15, 1998.

Frederick Q. Watt, with whom Watt & Sylvia and Lee Gelernt, Lucas Guttentag, Cecillia Wang, Michael Wishnie and the American Civil Liberties Union Immigrants' Rights Project were on brief, for appellant.

Frank W. Hunger, Assistant Attorney General, Civil Division, with whom William J. Howard, Senior Litigation Counsel, and Edward J. Duffy, Attorney, Civil Division, Of-

fice of Immigration Litigation, United States Department of Justice were on brief, for appellees.

Gerald L. Neuman and Lenni B. Benson for amici curiae Debra Anker, Lecturer in Law, Harvard Law School; Prof. Lenni B. Benson, New York Law School; Carolyn Patty Blum, Lecturer in Law, University of California at Berkeley School of Law; Prof. Richard A. Boswell, Hastings College of the Law, University of California; Prof. Erwin Chemerinsky, University of Southern California; Prof. David D. Cole, Georgetown University Law Center; Prof. Michael J. Churgin, University of Texas School of Law; Prof. Mary L. Dudziak, University of Iowa College of Law; Prof. Joan M. Fitzpatrick, University of Washington School of Law; Prof. Maryellen Fullerton, Brooklyn Law School; Prof. Kevin R. Johnson, University of California at Davis School of Law; Prof. Daniel Kanstroom, Boston College Law School; Prof. Harold Hongju Ko, Yale Law School; Prof. Stephen H. Legomsky, Washington University School of Law; Prof. Hiroshi Motomura, University of Colorado School of Law; Prof. Gerald L. Neuman, Columbia University School of Law; Prof. Carol Sanger, Columbia University School of Law; Prof. John Scanlan, Indiana University School of Law at Bloomington; Prof. Peter H. Schuck, Yale Law School; Prof. Peter J. Spiro, Hofstra University School of Law; Prof. Margaret H. Taylor, Wake Forest University School of Law; Prof. Larry W. Yackle, Boston University School of Law.*

Linton Joaquin and Manuel D. Vargas for amici curiae National Immigration Law Center and American Immigration Lawyers Association.

Before STAHL, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Raul Goncalves has been a permanent resident alien for twenty-five years, ever since he arrived in the United States at the age of three, and now is subject to deportation because he has committed crimes of moral tur-

pitude such as theft, possession of marijuana and the like. He filed an application in 1994 for discretionary relief from deportation with the immigration authorities under § 212(c) of the Immigration and Nationality Act (INA), as the law permitted him to do.

While Goncalves' application was still pending, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which, at § 440(d), restricted the availability of discretionary relief. The question then arose as to whether Congress intended these restrictions to apply retroactively. The Board of Immigration Appeals (BIA) said that Congress did not intend the restrictions to be fully retroactive, and that at least those aliens whose applications were pending on the date of AEDPA's enactment, like Goncalves, could continue to pursue their applications for relief. The Attorney General disagreed, reversed the BIA, and required the dismissal of all pending applications for § 212(c) relief (even appeals from cases where immigration judges had said relief should be granted). As a result, Goncalves' application was dismissed without being heard by the BIA and he was taken into custody by federal officials.

Goncalves filed a petition for habeas corpus in the district court, rather than filing for direct review in this court. This he was required to do by the precedent of this court. *See Kolster v. INS*, 101 F.3d 785 (1st Cir. 1996). The district court dismissed the petition, finding the Attorney General, and not the BIA, was correct in the interpretation of the statute.

Goncalves appealed, raising pure issues of law, including a challenge to the Attorney General's interpretation of the statute and constitutional claims. The Attorney General defends on two fronts. Goncalves filed in the wrong court, she says. He should have filed in the court of appeals, he missed the deadline to do so, and so the case must be dismissed. In fact, she says, Congress sub silentio stripped the district courts of their traditional habeas jurisdiction under 28 U.S.C. § 2241 to hear claims of the type

---

* Institutions are listed for identification purposes only.

Goncalves asserts. Secondly, she says, no court may review her decision as to whether Congress intended the restrictions in AEDPA § 440(d) to apply to pending applications. Congress exempted her decision from any judicial review when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (enacted Sept. 30, 1996). In any event, she argues, her decision is entitled to deference. We find the Attorney General's arguments unpersuasive and agree that Goncalves may still pursue his claim for § 212(c) relief. We reverse and remand this case to the BIA.

A summary of our reasoning may be helpful. This case presents two sets of major issues. The first is which federal court, if any, has jurisdiction to hear Goncalves' claims. We conclude that Congress has divested the United States Courts of Appeals of their former statutory jurisdiction to hear such cases on direct review of the administrative agency's decision. We further conclude, following *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), that Congress neither explicitly nor by implication repealed the grant of jurisdiction in 28 U.S.C. § 2241 to issue writs of habeas corpus to persons in federal custody which the federal district courts have had since 1789 and which has always been available in immigration cases.

If there is jurisdiction, we ask whether Congress intended nevertheless to restrict the scope of review to preclude review of Goncalves' claims. To the extent that Congress intended to narrow the scope of review of discretionary decisions by the administrative agency, we note that this case does not involve any such exercise of discretion, but rather concerns a pure issue of law. That pure issue of law, of whether Congress intended to make a particular provision of a statute retroactive, is of a type traditionally resolved by the courts. We discern no intent by Congress to restrict the scope of judicial review of that question. Our conclusion avoids the need to reach novel and complex constitutional issues under the Suspension Clause, Article III, the Due Process Clause and the Equal Protection Clause.

The second major set of issues addresses the merits: is the Attorney General correct in her interpretation that AEDPA § 440(d), as amended by IIRIRA, eliminates eligibility for § 212(c) relief retroactively for aliens convicted of crimes involving moral turpitude? We analyze the question under *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), cases concerning the temporal application of new statutes. We conclude, contrary to the Attorney General, that Congress did not intend its new provisions restricting such discretionary relief to apply retroactively. The statute's text reveals numerous instances where Congress used explicit language to make its new restrictions apply retroactively; for example, it used such language with respect to alien terrorists. But there is no such explicit text as to aliens in Goncalves' position.

We check our interpretation of the text against the legislative history to ensure we have not gone astray. That history shows three things. First, Congress expressly considered a provision which would have explicitly made the new restrictions on § 212(c) relief applicable retroactively and chose not to enact that provision. Second, Congress was keenly aware of the problem of whether restrictions on relief should apply retroactively. Third, Congress enacted IIRIRA against the backdrop of an administrative ruling by the BIA that the restrictions on § 212(c) relief for aliens convicted of crimes involving moral turpitude, contained in AEDPA § 440(d), was not fully retroactive and did *not* apply to pending applications. In the face of that ruling, the same Congress that had enacted AEDPA chose, in IIRIRA, not to amend AEDPA explicitly to provide that the AEDPA § 440(d) restrictions applied retroactively. It made that choice even though, in IIRIRA § 306, it amended AEDPA § 440(d), the very subsection at issue, in other respects. We therefore conclude that the BIA is required to *consider* Goncalves' application for § 212(c) relief from deportation. Whether the immigration authorities

grant or deny that application, is, of course, within their discretion.

## I. Facts and Procedural History

Raul Percira Goncalves is a lawful permanent resident of the United States. He committed a series of thefts, he says while under the influence of alcohol, and was incarcerated. He has been convicted of charges of breaking and entering, larceny, possessing burglary tools, receiving stolen property, and one charge of possession of marijuana. Those non-violent offenses, Goncalves conceded, are crimes "involving moral turpitude" and subjected him to deportation. *See* Immigration and Nationality Act (old INA) § 241(a)(2)(A)(ii), House Judiciary Comm. Print, 104th Cong., 1st Sess. (10th ed.1995) (reflecting laws enacted as of May 1, 1995), now renumbered as INA § 237(a)(2)(A)(ii) and codified at 8 U.S.C.A. § 1227(a)(2)(A)(ii) (West Supp.1998)[1] ("Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct ... is deportable."). On his release from prison in May of 1994, he was taken into custody for deportation, although he was released on bail while his petition was pending before the INS. In the interim he attended meetings of Alcoholics Anonymous. He has since earned his high school equivalency diploma, married, had a child, and been gainfully employed.

At the time the deportation proceedings against him commenced, Goncalves was eligible to apply to the Attorney General for a discretionary waiver of deportation. That is because he was a lawful permanent resident, had seven years of "lawfully unrelinquished domicile" and the crimes he committed were not "aggravated" felonies. *See* old INA § 212(c); *see also Francis v. INS*, 532 F.2d 268 (2d Cir.1976) (§ 212(c) relief is available in deportation as well as exclusion proceedings); *Matter of Silva*, 16 I. & N. Dec. 26 (BIA 1976) (adopting *Francis* decision na-

tionwide). He had no right to remain in this country, but he was entitled by § 212(c) to apply for a waiver of deportation and ask the Attorney General, in the exercise of her discretion, to allow him to remain here.

Goncalves applied for § 212(c) relief in September 1994. Under the law in effect in 1994, an alien applying for a waiver first presented his case to an Immigration Judge (IJ), as Administrative Law Judges are known in the INS's Executive Office for Immigration Review. The IJ was required to balance the positive and adverse factors in determining whether a waiver was warranted, and to justify his or her decision, whether in favor or against granting a waiver, to allow review by the BIA and the courts. *See Matter of Marin*, 16 I. & N. Dec. 581, 585, 1978 WL 36472 (BIA 1978) (listing factors). The IJ agreed that Goncalves was statutorily eligible to apply for § 212(c) relief but Goncalves failed to convince the IJ that he was worthy of it. On Jan. 20, 1995 the IJ denied his application and Goncalves took a timely appeal. And there the case sat for more than two years, undoubtedly because of the very large number of cases that were pending before the Board. *See* H.R. Rep. No. 104–469, pt. 1, at 119 (1996) (noting that over 17,000 aliens filed appeals to the BIA in 1995).

The BIA never reached the merits of Goncalves' application. On March 24, 1997, the BIA dismissed Goncalves' appeal on the grounds that he was no longer statutorily eligible for § 212(c) relief, as a result of enactment of AEDPA in the interim. The BIA was compelled to do so by the decision of the Attorney General in *Matter of Soriano*, Int. Dec. 3289, 1996 WL 426888 (Op. Att'y Gen. June 27, 1996) (beginning at *16). The Attorney General's decision in *Soriano* concluded that Congress intended to make the new restrictions on § 212(c) relief contained in AEDPA § 440(d) retroactive and that the new restrictions should be applied

---

**1.** Citation to "INA" refers to the INA as currently in effect, whether or not the specific provision has been changed by AEDPA or IIRIRA. For ease of reference, we provide parallel citations to the current version of the United States Code Annotated. Citation to "old INA" refers to the

INA as in effect on May 1, 1995, as set forth in the tenth edition of House Judiciary Committee's publication of the statute, i.e., as in effect prior to the amendments wrought by AEDPA and IIRIRA.

even to those applications filed before the date of AEDPA's enactment. *Soriano* required the dismissal of all such pending applications, even if the alien's application had been granted by the IJ and the case was pending on appeal. The Attorney General's *Soriano* decision reversed an earlier opinion by the BIA, sitting en banc, that found no congressional intent to apply the new restrictions to pending applications, and so would have permitted Goncalves' appeal to be heard on the merits.

Because his application had been dismissed, Goncalves was taken back into federal custody on June 25, 1997 for deportation. On August 8, 1997, Goncalves filed a petition for habeas corpus relief in the United States District Court for the District of Massachusetts. Goncalves' petition asserted that Congress did not intend AEDPA § 440(d) to apply retroactively, or at the very least that Congress did not intend to disrupt pending applications for relief. Goncalves also challenged, as a violation of the Equal Protection Clause, the government's decision to apply the statutes in a manner which made the availability of discretionary relief dependent on whether an alien was in deportation proceedings, as Goncalves was, or in exclusion proceedings, as Goncalves would have been if he had taken a brief trip abroad.[2] The district court dismissed Goncalves' petition for a writ of habeas corpus on August 14, 1997. On August 26, 1997, this court granted Goncalves' motion to stay deportation and for expedited consideration of his appeal. Goncalves has been in federal custody since June 25, 1997. He was thus in custody when his petition was filed and has apparently remained in custody throughout these habeas proceedings.

## II. Statutory Background

In order to understand the issues presented by this case, we outline some of the recent changes to our immigration laws. In the

interim two years between the IJ's denial of Goncalves' application for a discretionary waiver of deportation and the BIA's dismissal of his application, Congress substantially altered the immigration landscape by enacting two significant statutes, AEDPA and IIRIRA.

On April 24, 1996, Congress enacted AEDPA, which, at § 440(d), greatly expanded the category of criminal convictions that would render an alien ineligible to apply for § 212(c) relief. Although AEDPA § 440 contained an express "effective date" provision, that provision by its terms applied only to § 440(e) (expanding INA definition of "aggravated felony"), and not to § 440(d), the subsection which concerns us.

Additionally, AEDPA § 440(a) eliminated statutory review pursuant to the APA in the U.S. Courts of Appeals for some categories of deportation cases. In cases involving denial of an application for discretionary waiver by an alien deportable by reason of commission of aggravated felonies, this court held in *Kolster, supra,* that Congress had eliminated the statutory grant of jurisdiction in the courts of appeals over such claims. *Kolster* also held that this posed no constitutional problems because residual jurisdiction existed in the district courts over habeas corpus petitions. That holding was consistent with the position taken by the INS; indeed, the INS conceded that there would be some form of habeas jurisdiction in the district court. *Kolster* expressly reserved issues concerning the source of this habeas jurisdiction and the scope of habeas review. *See id.* at 790 n. 4 & 791. It was in apparent reliance on the *Kolster* case and this court's subsequent decision in *Santos v. INS,* 124 F.3d 64 (1st Cir.1997) (rejecting INS claim that, after passage of IIRIRA, petition for review in court of appeals, rather than petition for a writ of habeas corpus, was the proper forum to raise a jurisdictional or constitutional challenge to an order of deportation), that Gon-

---

**2.** The BIA has interpreted AEDPA § 440(d) as precluding relief only in deportation proceedings, not in exclusion proceedings. *See Matter of Fuentes–Campos,* Int. Dec. 3318, 1997 WL 269368 (BIA May 14, 1997). Although IIRIRA has abolished this distinction by combining the two into a new proceeding known as a "removal

proceeding," this change does not affect aliens subject to the "transitional rules." Relying on *Francis, supra,* Goncalves argues that there is no rational basis for making the availability of discretionary relief depend on the distinction between these two forms of proceedings. We express no view on the merits of this argument.

calves filed his petition for habeas corpus in the district court.

Within a short time Congress changed some of the rules established by AEDPA. On September 30, 1996, Congress enacted IIRIRA. Under IIRIRA there are two new sets of rules: the new permanent rules and the "transitional rules." *See* IIRIRA § 309(c), as amended by Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657. As made clear by the technical amendments, the new permanent rules under IIRIRA are effective for cases in which the INS instituted removal proceedings on or after April 1, 1997. *See id.* In contrast, the transitional rules are to be applied to deportation proceedings which were commenced before April 1, 1997. Because Goncalves' deportation was initiated before April 1, 1997, his claims are governed by the transitional rules, as both the Attorney General and Goncalves agree.

Goncalves' petition, governed by the transitional rules,[3] raises pure issues of law. The first is whether, under the transitional rules, Congress intended for jurisdiction over this case to be vested, if indeed in any court, in the court of appeals, as the Attorney General argues, or in the district court on petition for habeas corpus, as Goncalves argues. We pause to note that the position taken by the

Attorney General now is the opposite of the position she took in *Kolster*.[4] If the Attorney General is correct, then, she argues, Goncalves loses his case because he did not file a petition with this court within the thirty day period of time allotted.[5]

If Goncalves is correct, there is no time limitations problem, but there is a different problem. We must look at whether Goncalves may raise on habeas the type of statutory claim he now makes: that as a pure issue of law, the Attorney General is mistaken in her conclusion that Congress intended its restrictions of § 212(c) relief to apply retroactively. If there was jurisdiction over such a claim, then we must review de novo the district court's determination that the Attorney General's decision is correct.

### III. Jurisdiction

*A. Jurisdiction in the Court of Appeals*

■ The Attorney General argues that Goncalves should have presented any claims that he could have made in a petition for review to this court within thirty days of the INS's final decision, and that he is therefore precluded from making such claims on habeas. The short answer is that this argument is foreclosed by *Kolster*, and that any argument that IIRIRA requires us to reconsider *Kolster* is foreclosed by *Santos*. However,

---

3. The new permanent rules nevertheless have some relevance. Under the permanent rules, Congress allowed a new form of discretionary relief from deportation for those aliens convicted of crimes, but limited this new relief to a smaller category of aliens than had historically been eligible (pre-AEDPA) to seek § 212(c) relief. IIRIRA § 304, adding new INA § 240A, codified at 8 U.S.C.A. § 1229b (West Supp.1998), consolidates "suspension of deportation" relief and aspects of the former § 212(c) relief into a new form of relief called "cancellation of removal." "Cancellation of removal" relief restores discretionary relief for aliens who are deportable because they have committed two or more crimes involving moral turpitude under INA § 237(a)(2)(A)(ii). Thus, if Goncalves had been charged with deportability on this ground after April 1, 1997, he would have been permitted to apply for this new form of relief. "Cancellation of removal" relief, like § 212(c) relief before AEDPA, is available for all aliens whose criminal convictions do not qualify as "aggravated felonies." *See* IIRIRA § 304(a) (adding new INA § 240A).

4. The Attorney General has reversed her position on which court has jurisdiction because of her

interpretation of the judicial review provisions of IIRIRA, which we discuss below.

5. Of course, this court's *Kolster* and *Santos* decisions, and petitioner's apparent reliance on those decisions, complicate any use of the thirty day limit to dismiss Goncalves' case. Even if we were to reverse *Kolster* and hold that Goncalves could have presented his claims on direct review in this court, a substantial question would remain as to whether we would apply the thirty day limit for filing to Goncalves. A long line of Supreme Court cases, beginning with *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), has refused to apply newly-specified statutes of limitations retroactively to bar suits that, under controlling precedent, were filed in a timely manner. *See also American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Thus, it is likely we would have to reach the merits of this case in any event.

as this court did not fully explain its reasoning in *Santos*, and the Attorney General continues to press this argument, we explain why Goncalves could not have filed a petition for review in this court.

■ We start with the language of the transitional rules provisions of the statute, for the general rule is that " '[c]ourts created by statute can have no jurisdiction but such as the statute confers.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988) (quoting *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850)). IIRIRA § 309(c)(1), as amended by Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657, provides:

> Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings [before April 1, 1997]—
>
> (A) the amendments made by this subtitle shall not apply, and
>
> (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

This provision of IIRIRA seemingly supports the Attorney General because it makes judicial review of final orders of deportation for aliens under the transitional rules subject to old INA § 106 (as then in effect), which IIRIRA § 306(b) repeals. Old INA § 106 made the judicial review provisions of the APA, codified at 28 U.S.C. ch. 158 (1994), applicable (with modifications) to immigration decisions. The APA judicial review provisions vest the courts of appeals with jurisdiction to review final agency action. *See* 28 U.S.C. § 2344 (1994).

The IIRIRA provision establishing "transitional rules," IIRIRA § 309(c)(1), is, however, expressly subject to IIRIRA § 309(c)(4)(G), which provides:

> (4) TRANSITIONAL CHANGES IN JUDICIAL REVIEW.—In the cases de-

scribed in paragraph (1) in which a final order of exclusion or deportation is entered more than 30 days after the date of enactment of this Act, notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of date of enactment of this Act) to the contrary—

> \*    \*    \*
>
> (G) there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered ... by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

Goncalves falls within the language of subpart (G), as the parties recognize.[6]

A straightforward reading of subpart (G) leads to the conclusion that IIRIRA does not permit initial jurisdiction in the courts of appeals to hear "appeals" by aliens, like Goncalves, who have been convicted of two crimes of moral turpitude. The section says "there shall be no appeal," a reference to an appeal to the courts of appeals. From this, it is clear that there is no grant of jurisdiction to the courts of appeals over this category of transitional cases, i.e., claims by aliens deportable by reason of having committed specified criminal offenses.

Despite the literal language of IIRIRA § 309(c)(4)(G), the Attorney General argues that subpart (G) should be read differently, in light of the separate judicial review provisions for aliens governed by the permanent rules found at IIRIRA § 306. The Attorney General relies on IIRIRA § 306(a), which adds new INA § 242(g), 8 U.S.C.A. § 1252(g) (West Supp.1998):

> "(g) EXCLUSIVE JURISDICTION.— Except as provided in this section [i.e., new INA § 242] and notwithstanding any other

---

6. There is no doubt that Goncalves' concession that he had been convicted of two or more "crimes involving moral turpitude, not arising out of a single scheme of criminal conduct," rendered him deportable pursuant to old INA § 241(a)(2)(A)(ii). Before the IJ, Goncalves con-

ceded at least two convictions for which he was punished by a term of imprisonment longer than one year, so "both predicate offenses are ... otherwise covered by section 241(a)(2)(A)(i) of [the old INA.]"

provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."

Although IIRIRA § 306 is generally concerned with the permanent rules and has an effective date of April 1, 1997 and so does not affect Goncalves, there is a special effective date for that part of IIRIRA § 306 comprising new INA § 242(g).[7] Thus, new INA § 242(g) applies to Goncalves' claims. The Attorney General argues that this provision was meant to consolidate all review in the courts of appeals, so that Goncalves can make his claims, if at all, only in the courts of appeals.

But new INA § 242(g) does not read as the Attorney General suggests. The subsection does not refer to consolidation of all cases in the courts of appeals or state that the courts of appeals would have "exclusive jurisdiction." The "exclusive jurisdiction" title refers to the grants of jurisdiction provided in new INA § 242 as does the "except as provided in this section" language. The language is not meant to consolidate all review in the courts of appeals; indeed, new INA § 242 has explicit provisions referring to jurisdiction in courts other than the courts of appeals. There are provisions governing habeas corpus proceedings, and, in a defined category of cases, providing for exclusive jurisdiction in the District Court of the District of Columbia.

Indeed, new INA § 242 contradicts the Attorney General's argument. Of particular significance is new INA § 242(e)(2), which states that the habeas corpus review of orders denying aliens entry to the United States is restricted to certain narrow questions. This section assumes that such jurisdiction exists, presumably pursuant to 28 U.S.C. § 2241. As the courts of appeals ordinarily may not issue original writs of habeas corpus but instead will refer such petitions to the appropriate district court, *see* Fed. R.App. P. 22(a), and as the Supreme Court will only consider a petition for an original writ of habeas corpus in very limited circumstances, *see* Sup.Ct. R. 20(4)(a), the statute apparently assumes that such review will initially be in the district courts. Thus, the language of new INA § 242(g) assumes the existence of some habeas jurisdiction in the district court.

We do not, in conclusion, read the new INA § 242 as granting jurisdiction to the courts of appeals in transitional rules cases over this category of claims. The more difficult question, we believe, is whether these provisions were meant to preclude *any* exercise of jurisdiction, even on habeas, over claims, constitutional or otherwise, by aliens in the position of Goncalves.

### B. Habeas Jurisdiction in the District Courts

#### 1. Positions of Parties

We wish to be clear about the Attorney General's position. She argues not that all review is precluded but rather that some limited scope of review is available to hear certain sorts of claims, and that Goncalves' claims do not fall within the permissible scope of review. The Attorney General argues that there must be an Article III court available to hear substantial claims of violation of constitutional rights amounting to a fundamental miscarriage of justice.[8] But

---

7. That special rule, contained in IIRIRA § 306(c), as amended by Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657, provides that new INA § 242(g) shall apply "without limitation to claims arising from all past, pending or future exclusion, deportation or removal proceedings under this Act."

8. We express no opinion on the Attorney General's constitutional arguments. We note, however, that the Attorney General's formulation of the standard of constitutionally-compelled review is drawn from the very different context of succes-

sive federal habeas corpus petitions by prisoners in state custody who have already had one or more opportunities for full judicial process and appeals in the state system, with an opportunity for further review in the Supreme Court by a writ of certiorari, and one or more opportunities for review in the federal judiciary on their first habeas petition. *See Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862–63, 122 L.Ed.2d 203 (1993). Goncalves, in contrast, is in federal custody and has only been afforded the first level of *administrative* review of his case. Indeed, the Attorney General's position is that there should

Goncalves himself presents no such claim, she asserts. In addition, the Attorney General argues, there must be inherent authority in the judiciary to review certain non-constitutional claims, i.e., whether the person being deported meets the statutory prerequisites: that the person is an alien, has been convicted of the crimes, and the convictions are of the sort which meet the statutory definitions. But Goncalves, she notes, does not present these types of claims either. The Attorney General essentially argues there is an inherent jurisdiction to hear these constitutional and statutory prerequisite categories of claims, although IIRIRA itself makes no provisions for either type of review as to aliens like Goncalves.

It is far from clear from what source the Attorney General finds the authority for such review. One theory is that the authority may be derived not from an explicit statutory text but, at best, from the interstices of the various immigration statutes. Another theory is that the source of jurisdiction is the Constitution itself. Both theories present obvious problems.

Goncalves asserts that the question he poses—a question of statutory construction—is subject to judicial review. In contrast to the Attorney General, Goncalves grounds judicial review directly on statutory authority: the grant of habeas corpus jurisdiction under 28 U.S.C. § 2241. This grant has been part of the juridical fabric of this nation since its enactment in the first Judiciary Act. *See* Judiciary Act of 1789, § 14, 1 Stat. 73, 81–82; *see generally* Richard H. Fallon, Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* ch. 11, § 1 (4th ed.1996); Erwin Chemerinsky, *Federal Jurisdiction* § 15.1, at 780 (2d ed.1994) (noting Blackstone's reference to the writ of habeas corpus as "the most celebrated writ in English law"). It is only if we conclude that Congress intended in IIRIRA to eliminate that grant of habeas jurisdiction that we must face the question of whether some form of review on habeas is

mandated by the Suspension Clause,[9] or, as Goncalves argues, by the Due Process Clause of the Fifth Amendment or by Article III itself, and, if so, the nature of that review.

## 2. Congressional Intent to Repeal 28 U.S.C. § 2241

■ The Attorney General argues that Congress has repealed 28 U.S.C. § 2241, as applied to immigration cases such as this one. Under *Felker, supra,* the question we must decide is whether Congress has expressly repealed or modified the federal courts' habeas authority, here under § 2241. *Felker* makes clear that if Congress intends to repeal or restrict habeas jurisdiction under § 2241, it must say so explicitly. Thus, we will not find a repeal of § 2241 merely by implication, but only by express congressional command.

In *Felker,* the issue was whether Title I of AEDPA, which through §§ 106(b)(1) and (b)(2) amended 28 U.S.C. § 2244(b), also was meant to eliminate the Supreme Court's original habeas jurisdiction under 28 U.S.C. §§ 2241 and 2254. In concluding that AEDPA tit. I preserved the Supreme Court's jurisdiction to issue original habeas petitions, the *Felker* court applied the model of decision the Supreme Court had used more than a century earlier in *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1869).

*Ex parte Yerger* refused to read an act of Congress as impliedly impairing habeas corpus jurisdiction in light of its constitutionally protected status. Previously, in *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869), the Supreme Court had upheld an act of Congress that expressly restricted appeals of habeas cases under the Judiciary Act of 1867, 15 Stat. 385, for prisoners in state custody. In *Ex parte Yerger,* the Court avoided impairing the historical core of habeas jurisdiction, and addressing the attendant Suspension Clause issues, by interpreting the repeal at issue in *Ex parte McCardle* as affecting only appeals under the 1867 Act,

---

be no judicial review in any court of Goncalves' claims.

9. The Suspension Clause provides that "[t]he privilege of the Writ of Habeas Corpus shall not

be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

and not appeals under the Judiciary Act of 1789, which provided the grant of habeas jurisdiction for prisoners in federal custody. As Goncalves is in federal custody and seeks review of an administrative proceeding, not collateral review of a judicial proceeding, his case is directly governed by *Ex parte Yerger.*

*Felker* regarded *Ex parte Yerger* as adopting a general rule of construction that any repeal of the federal courts' historic habeas jurisdiction, whether for prisoners in federal or state custody, must be explicit and make express reference specifically to the statute granting jurisdiction. Application of the *Ex parte Yerger* rule to Goncalves' case is thus even more appropriate than in *Felker* itself, as Goncalves is in federal custody and has had no judicial review of his claims whatsoever.

There is no question that, unless it has been expressly repealed, § 2241 provides a basis for reviewing immigration decisions. Aliens in custody of federal immigration officials have traditionally been able to obtain review of immigration decisions by petitioning for a writ of habeas corpus under what is now § 2241. Soon after the federal government began to regulate immigration, the Supreme Court considered an argument that the habeas corpus statute did not apply to an alien under a theory that the only restraint on his liberty was that "he was not permitted to enter the United States." *United States v. Jung Ah Lung,* 124 U.S. 621, 626, 8 S.Ct. 663, 666, 31 L.Ed. 591 (1888). The Supreme Court rejected this argument as applied to aliens in custody of federal officials. *See id.* Habeas corpus review remained the principal avenue for judicial oversight of immigration laws until the Supreme Court's decision to allow more expansive review of immigration decisions under the APA, later codified in old INA § 106. *See Shaughnessy v. Pedreiro,* 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955).

Although the Attorney General suggests that the application of the APA to immigration decisions *repealed* habeas review under § 2241, we find no authority that supports this proposition. The decisions that she says stand for the proposition that APA review in the courts of appeals precluded any jurisdiction in the district courts concern jurisdiction under the APA, not habeas jurisdiction under § 2241. *See, e.g., Agosto v. INS,* 436 U.S. 748, 752–53, 98 S.Ct. 2081, 2084–85, 56 L.Ed.2d 677 (1978) (old INA § 106 "eliminated district court review of deportation orders *under § 10 of the Administrative Procedure Act,* and replaced it with direct review in the courts of appeals ...." (emphasis added)). Indeed, the Supreme Court expressly stated that the vesting of jurisdiction to review orders under the APA exclusively in the courts of appeals "of course ... in no way impairs the ... availability of habeas corpus relief." *Foti v. INS,* 375 U.S. 217, 231, 84 S.Ct. 306, 315, 11 L.Ed.2d 281 (1963). The Attorney General's argument that Congress' decision to make available another avenue for judicial review repeals by implication the previous jurisdiction exercised pursuant to § 2241 is precisely what *Felker* and *Ex parte Yerger* do not permit.

The Attorney General contends, in addition, that AEDPA and IIRIRA have expressly repealed jurisdiction under § 2241. We find no such express language. First, the language in IIRIRA that restricts jurisdiction over this category of aliens states:

> [N]otwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of enactment of this Act) to the contrary—
>
> \*     \*     \*
>
> (G) there shall be no appeal permitted in the case of an alien who is ... deportable by reason of having committed [particular] criminal offense[s]. . . .

IIRIRA § 309(c)(4). In *Felker,* the language at issue in AEDPA provided that "the grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition ... for a writ of certiorari." For present purposes we see no significant distinction between the language faced by the *Felker* Court that an order "shall not be appealable" and the language we face that "there shall be no appeal permitted." Both provisions restrict one avenue of relief—in *Felker,* by restricting the Supreme Court's jurisdiction to hear appeals

and to entertain writs of certiorari, and in this case, by restricting an "appeal" under the APA judicial review provisions. *Felker* holds that such language is not explicit enough impliedly to impair habeas corpus jurisdiction.

The Attorney General relies also on AEDPA § 401(e), explicitly repealing old INA § 106(a)(10), which had referred to habeas jurisdiction.[10] Section 106(a)(10) had provided:

(10) any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

Thus, the Attorney General argues, AEDPA eliminates not only the prior authorization for the exercise of habeas jurisdiction (in addition to APA review) in old INA § 106(a)(10), but also the basic grant of habeas jurisdiction contained in 28 U.S.C. § 2241.

However, Congress was explicit that it was striking the reference to habeas in old INA § 106(a)(10). It did not, in contrast, expressly amend or alter 28 U.S.C. § 2241. Old INA § 106(a)(10) was a specialized immigration provision which had made clear that aliens with access to the ordinary judicial review processes also could seek habeas review if they were in custody. This provision ensured that such aliens would have a supplemental collateral remedy,[11] and did not apply to aliens who could not obtain review under the APA judicial review provisions. Aliens without other recourse had traditionally been able to obtain review by habeas corpus, even in the face of statutory language precluding all other review. *See Heikkila v. Barber,* 345 U.S. 229, 233–35, 73 S.Ct. 603, 605–06, 97 L.Ed. 972 (1953). In enacting AEDPA, Congress was concerned about abuses of duplicative judicial remedies, and the elimination of old INA § 106(a)(10) served that congressional purpose.[12] It does not follow from the repeal of this provision of the INA that § 2241 habeas jurisdiction has been repealed altogether in immigration cases. Had Congress wished to eliminate any possible habeas jurisdiction under 28 U.S.C. § 2241, it could easily have inserted an explicit reference, but it did not.

This conclusion is reinforced by the fact that both IIRIRA and AEDPA make specific reference when they amend or repeal statutes granting jurisdiction to the federal courts. *See Felker,* 518 U.S. at 659–63, 116 S.Ct. at 2338–39. For example, AEDPA § 440(a), the provision at issue in *Kolster,* made specific reference to old INA § 106, the judicial review provision, providing that "Section 106 of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)(10)) is amended...." Likewise, AEDPA § 401(e), eliminating supplemental habeas jurisdiction under the INA, refers specifically to "Section 106(a) of the Immigration and Nationality Act," not 28 U.S.C. § 2241.[13]

Similarly, IIRIRA contains numerous provisions restricting or altering various avenues for judicial review, but in none of these provisions does IIRIRA mention § 2241. For example, IIRIRA § 306, enacting new INA § 242, refers specifically to several different grants of jurisdiction. That new section contains provisions referring specifically to the judicial review provisions of the APA, codified at 28 U.S.C. ch. 158, *see* new INA § 242(a)(1), and to the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, *see* new INA § 242(b)(5)(B), (7)(B). The new INA § 242 purports to restrict the jurisdiction of the federal courts in such proceedings. In-

---

10. AEDPA § 401(e) provides

(e) ELIMINATION OF CUSTODY REVIEW BY HABEAS CORPUS.—Section 106(a) of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)) is amended—

\* \* \* \* \* \*

(3) by striking paragraph (10).

11. The provision may also have ensured that APA review would be available, despite an argument that the existence of the habeas remedy was an alternative "adequate" remedy that would nor-

mally preclude such review. *See Town of Sanford v. United States,* 140 F.3d 20, 22–23 (1st Cir.1998).

12. *See* 141 Cong. Rec. S7823 (daily ed. June 7, 1995) (statement of Senator Abraham) (decrying the capacity of aliens to seek "repeated" or "successive" judicial review).

13. In AEDPA, when Congress wanted to amend habeas relief for state and federal prisoners seeking post-conviction review, it did so explicitly. *See* AEDPA tit. I.

deed, far from repealing § 2241 habeas jurisdiction, new INA § 242 presumes the existence of on-going habeas jurisdiction. This severely undermines the Attorney General's argument for implied repeal of § 2241 in immigration cases. IIRIRA was enacted after *Felker*, and Congress was well aware of the need for specific language if it wished to impair the Great Writ.

Nonetheless, the Attorney General argues that new INA § 242(g), the exclusivity provision, can be read to imply a repeal of § 2241 even without a specific reference. She argues that new INA § 242(g) provides that "notwithstanding any other provision of law, no court shall have jurisdiction" "except as provided in this section," i.e. new INA § 242, and so there is no need specifically to repeal § 2241. The new INA § 242, argues the Attorney General, is the only source of jurisdiction in immigration cases. Thus, it would require a specific reference to § 2241 to preserve such jurisdiction, rather than a specific reference to abolish it. *But see Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 11, 62 S.Ct. 875, 880–81, 86 L.Ed. 1229 (1942) (noting that, absent a specific repeal of jurisdictional authority, "[t]he search for significance in the silence of Congress is too often the pursuit of a mirage").

◼ This argument leads us to apply the long standing rule disfavoring repeal of jurisdictional provisions by implication, a rule which is particularly appropriate here. *See Felker*, 518 U.S. at 659–63, 116 S.Ct. at 2338–39. Although the breadth of the "notwithstanding" clause is sweeping, a reading which provided for no exceptions would have enormous consequences that are contrary to clearly expressed congressional intent. If the "notwithstanding" clause of subsection (g) is read to preclude *any* jurisdiction except that specifically authorized in new INA § 242, then that conflicts with IIRIRA § 309. Judicial review would be blocked not only for the narrow class of aliens in Goncalves' position, but for every alien subject to IIRIRA's "transitional rules." As new INA § 242 is only applicable for aliens subject to IIRIRA's

"permanent rules," *see* IIRIRA § 309, and as new INA § 242(g) is applicable immediately, *see* IIRIRA § 306(c), aliens subject to the transitional rules—i.e., every alien now in the administrative process whose case began prior to April 1, 1997—could not obtain any judicial review because they cannot take advantage of "this section," i.e., new INA § 242. Such a reading would clearly conflict with the congressional intent expressed in IIRIRA § 309 to preserve review in the transitional period under old INA § 106.

Finally, our refusal to find express repeal of § 2241 in new INA § 242(g) eliminates the need to address serious, novel and complex constitutional issues. We would be loath to find a repeal where that repeal creates serious constitutional problems. We note these constitutional concerns briefly to underscore the wisdom of avoiding them.

First, a finding that there is no statutory provision for any judicial review of the type of claim raised by Goncalves would raise substantial and complex constitutional questions concerning the limits of Congress' power under Article III to control the jurisdiction of the federal courts.[14] The Supreme Court has often interpreted statutes to avoid serious constitutional questions presented where statutory provisions appeared to foreclose review of constitutional claims by an Article III court. *See, e.g., Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (interpreting a statute, to avoid constitutional questions, to preserve review of a former CIA employee's claim who challenged a decision to fire him because of his homosexuality); *United States v. Mendoza–Lopez*, 481 U.S. 828, 838–39, 107 S.Ct. 2148, 2155–56, 95 L.Ed.2d 772 (1987) (requiring judicial review of the legality of a deportation order if that order is used "to conclusively establish an element of a criminal offense").

Second, a decision that Congress has repealed § 2241 would require us to decide whether the Suspension Clause of the Constitution permits Congress to do this. Goncalves seeks review under this grant of jurisdiction in a posture which the Supreme Court

---

**14.** Again, we distinguish such claims by aliens from post-conviction habeas proceedings by state

and federal prisoners.

has recognized is the historical core of the Suspension Clause—jurisdiction to review the legality of detention by executive branch officers. *See Felker,* 518 U.S. at 661–65, 116 S.Ct. at 2339–40 (noting that the writ originally only extended to prisoners in federal custody who were not "detained in prison by virtue of the judgment of a court" (citation and internal quotation marks omitted)); *see also Swain v. Pressley,* 430 U.S. 372, 386, 97 S.Ct. 1224, 1232, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring) ("[T]he traditional Great Writ was largely a remedy against executive detention.").

Our interpretation also avoids the question of whether the Constitution's Suspension Clause alone, unaided by statute, provides jurisdiction and the equally vexing issue of what kinds of claims are permitted under such novel jurisdiction. That, in turn, would raise the further question of the constitutional minimum content of judicial review for deportation decisions.[15]

For all of these reasons, we find no express congressional intent in the language of either AEDPA or IIRIRA that prevents an alien who is precluded from seeking judicial review under the APA by IIRIRA § 309(c)(4)(G) from seeking a writ of habeas corpus under 28 U.S.C. § 2241 to assert claims of the nature being asserted here. "This is the reasonable construction of the acts of Congress here in question, and they need not be otherwise interpreted.... The words here used do not require an interpretation that would invest executive or administrative officers with ... absolute, arbitrary power." *Japanese Immigrant Case,* 189 U.S. at 101, 23 S.Ct. at 615. Nor do they require a construction that would force this court to resolve the fundamental constitutional questions a repeal of § 2241 would provoke.

### 3. Does the Scope of Review Include Goncalves' Claims?

Jurisdiction being proper under 28 U.S.C. § 2241, we address the further question of whether Congress intended to restrict the scope of review on habeas to preclude review of the questions Goncalves poses.

In determining the scope of habeas review, we again start with the language of the statute, § 2241:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had....

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under or by color of the authority of the United States ... or

. . .

(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

Both subsections (c)(1) and (c)(3) are applicable here. The language of § 2241 itself does not contemplate a limitation of jurisdiction only to constitutional claims; instead, it con-

---

15. The Attorney General cites to broad statements concerning Congress' power to entrust administrative officials with primarily adjudicating deportation and exclusion cases. *See, e.g., Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952). But these cases took the availability of habeas review for granted. The question being asked was not whether Congress could withdraw habeas, but whether the Due Process Clause required more than the limited review available on habeas. *See Heikkila,* 345 U.S. at 233, 73 S.Ct. at 605 (Congress may constitutionally entrust fact-finding to administrative officials *because* review of the legality of the immigration authorities' actions is available on habeas). In *Heikkila,* for example, the Supreme Court stated that prior Immigration Acts were intended to foreclose judicial review to the fullest extent consistent with the Constitution. *See Heikkila,* 345 U.S. at 234–35, 73 S.Ct. at 605–06. However, under those Acts the availability of review on habeas corpus under § 2241 was never in doubt and the *Heikkila* court regarded that review as the constitutional floor. *See id.; see also Landon v. Plasencia,* 459 U.S. 21, 32–34, 103 S.Ct. 321, 329–30, 74 L.Ed.2d 21 (1982) (affirming procedural due process rights of permanent residents in exclusion proceedings); *Japanese Immigrant Case (Yamataya v. Fisher* ), 189 U.S. 86, 100–02, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903) (recognizing rights of aliens to due process in administrative decisionmaking, enforceable on habeas corpus).

templates challenges based on the "Constitution *or laws* or treaties of the United States."

Indeed, numerous immigration cases under the § 2241 jurisdiction have considered claims of statutory right, sometimes described as an integral part of ensuring due process *of law. See, e.g., Brownell v. Tom We Shung,* 352 U.S. 180, 182–84 n. 1, 77 S.Ct. 252, 254–55 n. 1, 1 L.Ed.2d 225 (1956) ("due process," enforceable on habeas, includes "conformity to statutory grounds"); *Kwong Hai Chew v. Colding,* 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953) (rejecting, on habeas, executive branch interpretation of procedural regulation); *Wong Yang Sung v. McGrath,* 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950) (rejecting, on habeas, executive branch's interpretation of APA procedural requirements); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948) (rejecting, on habeas, executive branch's interpretation of multiple criminal conviction deportation provision); *Delgadillo v. Carmichael,* 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 (1947) (rejecting, on habeas, executive branch's interpretation of statutory term "entry"); *Kessler v. Strecker,* 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939) (rejecting, on habeas, executive branch's interpretation of provision making aliens deportable on ideological grounds); *Mahler v. Eby,* 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549 (1924) (rejecting, on habeas, executive branch's interpretation of findings necessary for deportation after conviction under espionage act); *Gegiow v. Uhl,* 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114 (1915) (rejecting, on habeas, executive branch's interpretation of "public charge" ground of exclusion). As Justice Holmes observed in *Gegiow,* the enforcement of statutory claims is essential to ensuring that the intent of Congress is observed when it chooses to define the grounds for which aliens may be excluded or deported:

> The statute, by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. And when the record shows that a commissioner of immigration is exceeding his power, the alien may demand his release upon *habeas corpus.*

*Gegiow,* 239 U.S. at 9, 36 S.Ct. at 2–3 (emphasis in original).

The government relies on dictum in *Yang v. INS,* 109 F.3d 1185 (7th Cir.1997), stating that "an error of law does not support a writ of habeas corpus. . . ." *Id.* at 1196. That decision, however, was describing what the Seventh Circuit considered to be the minimum content of the constitutional writ; recently, the Seventh Circuit has moderated its statement in *Yang* that new INA § 242(g) had repealed 28 U.S.C. § 2241 in all cases. *See Turkhan v. INS,* 123 F.3d 487, 489–90 (7th Cir.1997).

In other respects, *Yang* and some similar statements in district court opinions, *see, e.g., Mbiya v. INS,* 930 F.Supp. 609, 612 (N.D.Ga. 1996) (requiring a "fundamental miscarriage of justice" before a challenge can be made on habeas corpus), have their origin in the very different standard that is applied to review of federal and state court convictions under 28 U.S.C. §§ 2254, 2255. *See United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979) (requiring "complete miscarriage of justice" to set free a convicted prisoner who alleges violation of a nonjurisdictional federal statute or rule).

In neither AEDPA nor IIRIRA did Congress purport to apply state prisoner postconviction relief rules to the entirely different provisions about deportation of aliens. We are disinclined automatically to import this standard into cases at the core of the traditional writ of habeas corpus—initial review of the legality of executive branch detention. This is especially so in light of the long line of precedent allowing aliens to make statutory claims on habeas. In cases concerning collateral review of state and federal convictions, a prisoner has already had substantial judicial review of his claims, including a trial and direct review of his conviction, often with multiple levels of review, and is seeking post-conviction relief. In Goncalves' case, by contrast, no court, state or federal, has heard his claims. In fact, it is the Attorney General's position that no court will ever have jurisdiction or authority to review her decision interpreting AEDPA § 440(d). The pure statutory claims Goncalves makes here

are well within precedent interpreting the core habeas protection provided by § 2241.[16]

We address one final argument in favor of the Attorney General. The Attorney General contends that, because she has discretion to grant or deny this relief from deportation in any event, her decision concerning Goncalves' statutory eligibility for this form of relief is itself not reviewable on habeas. We disagree. Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief. *See, e.g., Ipina v. INS,* 868 F.2d 511, 513 (1st Cir.1989) (contrasting legal question of whether an alien is a "refugee," and thus eligible for asylum, with discretionary decision whether to grant asylum).

■ Supreme Court precedent also requires us to reject this argument. The Court has determined that the refusal of the BIA to consider an alien's request for discretionary relief, in violation of statute or regulations, is a valid claim on habeas corpus. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). In making certain aliens eligible for discretionary relief, Congress intended the Attorney General or her designated subordinates to make a judgment. A refusal to make that judgment would frustrate Congress' intent. "[I]f the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience." *Id.* at 266–67, 74 S.Ct. at 503. Thus it is no answer to Goncalves' argument to emphasize the broad discretion of the political branches in immigration matters. It was the intent of Congress that such discretion be exercised.

Our holding is narrow and nothing we say should be taken to suggest that such review as is available on habeas is necessarily as broad as the traditional administrative review available under old INA § 106. For example, we are not being asked to "review[ ] and revers[e] the manner in which discretion was exercised" by examining "the evidence in the record supporting or undermining the alien's claim to discretionary relief." *Id.* at 268, 74 S.Ct. at 503. Whether such review is now available on habeas presents a different question than Goncalves' claim. The Supreme Court noted, in rejecting early attempts to apply the APA to immigration decisions, the very different scope of review required by "deciding on 'the whole record' whether there is substantial evidence to support administrative findings of fact," required by the APA, and the more basic review available on habeas that provides for "enforcement of due process requirements." *Heikkila,* 345 U.S. at 235–36, 73 S.Ct. at 606. That more basic review includes claims of statutory right, but not the broad review of administrative decisionmaking available under the APA. New INA § 242(a)(2)(B) denies jurisdiction to review discretionary decisions, at least for most cases under the permanent rules. We leave to future cases the task of defining the precise limit of the jurisdiction under 28 U.S.C. § 2241 in immigration cases.[17] We hold only that § 2241 allows us to consider the pure statutory question that Goncalves raises in this case.

### 4. Decisions of Other Circuits

Our approach to the jurisdiction-limiting provisions of both AEDPA and IIRIRA is in conformity with that of our sister circuits. Each circuit court has now held that AEDPA § 440(a), the initial limitation of jurisdiction

---

**16.** Indeed, the existence of this jurisdiction over statutory claims provides a ready basis for the federal courts to examine one category of questions that the Attorney General says must be allowed: prerequisite questions such as whether the petitioner is in fact an alien, whether he or she has been convicted of crimes that render him deportable within the meaning of the statute, and the like.

**17.** Amici law professors argue that habeas jurisdiction also traditionally allowed review, under a "manifest abuse of discretion" standard, of the *exercise* of discretion to deny relief. We do not address the question, which we view as separate and not presented by this case, of whether IIRIRA was intended to foreclose or impose limits on any such review. We hold today only that, on habeas, a petitioner may challenge the immigration authorities' failure to exercise discretion granted by statute.

which IIRIRA § 309(c)(4)(G) carries forward, deprives the courts of appeals of jurisdiction to entertain petitions for review of aliens convicted of specified criminal offenses. In every circuit which has addressed constitutional challenges to this withdrawal of jurisdiction, the court found that preclusion of all judicial review would present serious constitutional questions, and in every case those questions were avoided by noting the continuing availability of habeas review. Although the cases diverge in their approaches, they all agree on these two basic points—that Congress can constitutionally withdraw jurisdiction over such petitions for review under old INA § 106, but that some jurisdiction remains on habeas.[18] *See Turkhan,* 123 F.3d at 489–90; *Mansour v. INS,* 123 F.3d 423, 426 (6th Cir.1997); *Auguste v. Attorney General,* 118 F.3d 723, 726 n. 7 (11th Cir.1997); *Ramallo v. Reno,* 114 F.3d 1210, 1214 & n. 1 (D.C.Cir.1997); *Williams v. INS,* 114 F.3d 82, 83–84 (5th Cir.1997); *Fernandez v. INS,* 113 F.3d 1151, 1154–55 (10th Cir.1997); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27, 30–31 (2d Cir.1996); *Duldulao v. INS,* 90 F.3d 396, 400 n. 4 (9th Cir. 1996).[19] Indeed, many of the courts which have considered constitutional challenges cited *Felker* in support of the view that some jurisdiction remains on habeas, and some noted its holding disfavoring repeal of 28 U.S.C. § 2241 by implication.

Thus, although no circuit court has yet directly faced the issue of whether a court has jurisdiction on habeas to consider a claim like Goncalves', the great weight of circuit

authority is in favor of some form of habeas review for aliens in Goncalves' position. We conclude that Goncalves properly brought his claim in the district court under its § 2241 habeas jurisdiction.

## IV. Retroactivity of AEDPA § 440(d)

We turn to the statutory merits question: whether Congress intended for AEDPA § 440(d)'s restrictions on § 212(c) relief to apply retroactively to persons in Goncalves' position. The Attorney General's *Soriano* opinion concludes that the restrictions are fully retroactive and are applicable even to pending applications. We reject the Attorney General's reading of *Landgraf, supra,* a reading that the Supreme Court has also recently rejected. *See Hughes Aircraft,* 520 U.S. at ——–——, 117 S.Ct. at 1876–78. We conclude that Congress did not intend AEDPA § 440(d) to apply retroactively to Goncalves' application.

### A. Deference

Initially, we must consider what deference is owed to the Attorney General's *Soriano* decision holding that AEDPA § 440(d) is retroactive and applies to pending applications for § 212(c) relief. The Attorney General argues that the plain text of AEDPA § 440(d) does not answer the question of whether it is retroactive or applies to pending cases and that her interpretation regarding its effective date is, at least, a reasonable one under *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[20]

---

**18.** *Hose v. INS,* 141 F.3d 932 (9th Cir.1998) also concludes that some form of review is constitutionally compelled. *Hose* interpreted a different provision of IIRIRA and a different claim and found that, in light of the availability of review in the court of appeals over the petitioner's claim, no habeas relief was available. *See id.*

**19.** The Eighth Circuit and the Fourth Circuit have each applied the jurisdiction-limiting provisions of AEDPA § 440(a) in short per curiam decisions, without considering whether habeas review remains available. *See Mendez–Morales v. INS,* 119 F.3d 738 (8th Cir.1997) (per curiam); *Dehaney v. INS,* No. 96–1449, 1997 WL 135664 (4th Cir.1997) (unpublished per curiam).

**20.** Of course, the Attorney General's argument assumes that it is the Attorney General's deci-

sion, not the contrary decision of the Board of Immigration Appeals, that should be considered the "agency interpretation" for *Chevron* purposes, but this is far from clear. *Chevron* requires deference to an administrative agency's interpretation of the statutes implementing the programs it administers. This stems from a recognition that Congress intends certain questions to be answered by expert administrative agencies. *See, e.g., Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* 515 U.S. 687, 703, 115 S.Ct. 2407, 2415–16, 132 L.Ed.2d 597 (1995) (noting that "the degree of regulatory expertise necessary to [the] enforcement" of the Endangered Species Act counseled deference to an agency interpretation). Here, the immigration specialists at the Department of Justice adopted a view directly contrary to the Attorney

As the Attorney General notes, under the familiar formulation, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

We think it is a significant question whether the determination of the application of the effective date of a governing statute is the sort of policy matter which Congress intended the agency to decide and thus whether the doctrinal underpinnings of *Chevron* are present here. When Congress wants an agency to determine whether to apply new rules, it usually delegates that discretion expressly. *See, e.g.,* IIRIRA § 309(c)(2), (3) (giving the Attorney General discretion in some cases to determine whether to apply transitional or permanent rules). The question of whether AEDPA § 440(d) applies retroactively may be viewed as a "pure question of statutory construction for the courts to decide," *Cardoza–Fonseca,* 480 U.S. at 446, 107 S.Ct. at 1221, a question that is "quite different from the question of interpretation that arises in each case in which the agency is required to apply [statutory] standards to a particular set of facts" which involves the agency's particular expertise. *Id.* at 448, 107 S.Ct. at 1221. Nonetheless, we will assume arguendo that the Attorney General's opinion is subject to *Chevron* analysis.

■■■■ *Chevron,* though, requires a two-step analysis. The Attorney General's argument for deference bypasses the first step, which is to determine whether Congress has provided an answer to the specific question presented. "If, by 'employing traditional tools of statutory construction,' we determine that Congress' intent is clear, 'that is the end of the matter.'" *Regions Hosp. v. Shalala,* — U.S. —, —, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998) (quoting *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82). Those traditional tools of statutory construction include the familiar presumptions we employ,

including *Landgraf's* presumption against retroactivity.

■■■■ A contrary approach would permit the executive branch effectively to thwart the intent of Congress, made plain through a careful reading of the statutory provision at issue in context, so long as the executive branch's interpretation was a plausible reading of isolated statutory terms. Instead, as *Chevron* itself made clear, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9.

The Supreme Court has consistently rejected agency arguments for deference which would impair the courts' ability to examine congressional intent using our "'traditional tools of statutory construction.'" *Regions Hosp.,* — U.S. at —, 118 S.Ct. at 915 (quoting *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9). Instead, to determine whether Congress intended AEDPA § 440(d) to apply to such pending applications, we examine that provision in the normal manner. We look to that section not in isolation, but in the context of Title IV of AEDPA (which contains its immigration provisions) and in light of Title IV's overall structure.

■■■■ We are guided by *Landgraf* principles and seek a plain statement from Congress that expressly provides for retroactive application. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," not by looking at statutory terms in isolation. *Robinson v. Shell Oil Co.,* 519 U.S. 337, —, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). In *United States v. Rivera,* 131 F.3d 222 (1st Cir.1997) (en banc), this court noted "'the cardinal rule that a statute is to be read as a whole ..., since the meaning of statutory

General's view in *Soriano.* "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446–47 n. 30, 107 S.Ct. 1207, 1221 n.

30, 94 L.Ed.2d 434 (1987) (internal quotation marks omitted). On the other hand, it is the Attorney General rather than the BIA who is given final authority by Congress to oversee the immigration laws.

language, plain or not, depends on context.'" *Id.* at 225 (quoting *Conroy v. Aniskoff,* 507 U.S. 511, 515, 113 S.Ct. 1562, 1565, 123 L.Ed.2d 229 (1993)).

We next examine AEDPA's legislative history, not as a substitute for examination of AEDPA's text, but only as a check to see that our initial textual interpretation does not conflict with "a clearly expressed legislative intention contrary to the statutory language which would require the court to question the strong presumption that Congress expresses its intent through the language it chooses." *Rivera,* 131 F.3d at 226 (citation, internal quotation marks and alterations omitted).

Throughout, our statutory analysis is guided by the Supreme Court's retroactivity jurisprudence. In *Landgraf, supra,* the Supreme Court noted that, while "a court is to apply the law in effect at the time it renders its decision," *id.* at 264, 114 S.Ct. at 1496 (internal quotation marks and citations omitted), there is a strong presumption "deeply rooted in our jurisprudence ... and centuries older than our Republic" against retroactivity. *Id.* at 265, 114 S.Ct. at 1497. The Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf*'s presumption against retroactivity.[21] Such discretionary relief has been available in our system in some form since at least 1917; the origin of § 212(c) relief is in the Seventh Proviso to § 3 of the Immigration Act of 1917. *See Francis,* 532 F.2d at 270. In a substantial number of cases, aliens under deportation orders were granted such relief, usually on a showing that they had reformed their ways and become productive members of society. Indeed, from fiscal years 1989 through 1994, it appears that over half of all applications for § 212(c) relief were granted by the agency. *See Mojica v. Reno,* 970 F.Supp. 130, 178 (E.D.N.Y.1997).[22] AEDPA's restrictions on § 212(c) relief, as applied to Goncalves, thus clearly raise retroactivity concerns, requiring a close examination of AEDPA's text to determine whether Congress has expressly chosen to make its restrictions retroactive.

### B. Text

Title IV of AEDPA contains provisions restricting relief from deportation for two categories of aliens—aliens involved in terrorism and aliens convicted of ordinary crimes. Many of these provisions, with the notable exception of the provision of concern to us, AEDPA § 440(d), contain explicit subsections stating that they apply retroactively. We review these other provisions in determining whether Congress likewise intended to apply AEDPA § 440(d) retroactively. Two provisions restricting relief from deportation for aliens involved in terrorism, AEDPA §§ 413 and 421, are particularly helpful in this respect.

Under AEDPA § 413, alien terrorists[23] are made ineligible for several different forms of relief from deportation. That section contains an explicit "effective date" subsection, which provides:

**21.** In *Kolster,* this court applied *Landgraf* principles and found no retroactivity problems in applying AEDPA § 440(a), which precluded judicial review in the courts of appeals for aliens who are deportable for having committed aggravated felonies, immediately. The question Goncalves raises concerning AEDPA § 440(d) is fundamentally distinct. *Kolster* concerned a purely jurisdictional statute. *Landgraf* makes clear that the "[a]pplication of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case." *Landgraf,* 511 U.S. at 274, 114 S.Ct. at 1502 (internal quotation marks and citation omitted).

**22.** The BIA was not bound by the decision of the IJ either as to law or fact, but could review the record de novo. *See Matter of Adetiba,* 20 I. & N. Dec. 506, 507, 1992 WL 195812 (BIA 1992).

Goncalves followed this system. If the BIA had been permitted to hear his appeal on the merits, Goncalves would have argued that the IJ had given insufficient weight to the many favorable factors present in his case. *See Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (listing factors).

**23.** An alien terrorist is defined by AEDPA § 401(a) as any alien described in old INA § 241(a)(4)(B), now codified at 8 U.S.C.A. § 1227(a)(4)(B) (West Supp.1998), which provides that "any alien who has engaged, is engaged, or at any time after entry engages in any terrorist activity ... is deportable." Terrorist activity, in turn, is defined in old INA § 212(a)(3)(B)(iii), now codified at 8 U.S.C.A. § 1182(a)(3)(B)(iii) (West Supp.1998). Goncalves does not fit this definition.

The amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date.

*Id.* § 413(g). This language explicitly provides that the restrictions on relief from deportation imposed on alien terrorists should apply to all cases pending at the time of AEDPA's enactment, as long as "final action" had not yet been taken.

■ If Congress thought that such restrictions would as a matter of course be applied to pending cases, as the Attorney General's argument requires, then this provision would have accomplished nothing. In *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), the Court noted "the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute." *Id.* at ——, 117 S.Ct. at 1166 (citations, internal quotation marks and alterations omitted); *accord Walters v. Metropolitan Educ. Enters.*, 519 U.S. 202, ——, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997). This is particularly true when there is a contrast in language between two sections of the same statute. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Cardoza–Fonseca*, 480 U.S. at 432, 107 S.Ct. at 1213 (citation, internal quotation marks and alterations omitted).

The Attorney General responds by drawing a distinction between provisions restricting discretionary relief, such as § 440(d) (applicable here), and provisions restricting relief that she says involve no exercise of discretion. The Attorney General argues that discretionary relief, such as § 212(c) relief, is best analogized to prospective injunctive relief, restrictions of which, under *Landgraf*'s judicial default rules, are generally held to be applicable immediately and not to present any retroactivity concerns. *See Landgraf*, 511 U.S. at 273–74, 114 S.Ct. at 1501–02. Thus, the Attorney General

concludes, Congress would have expected restrictions on such discretionary relief to apply to pending cases even in the absence of an explicit "effective date" provision, and would have felt no need to include an express provision making those restrictions retroactive.

By contrast, the Attorney General continues, AEDPA § 413 restricts several forms of relief for alien terrorists, not all of which are discretionary. In the absence of an explicit "effective date" provision, the Attorney General concludes, Congress would expect the courts to apply *Landgraf*'s normal presumption against retroactivity. This, she says, explains the difference between § 413, denying relief for alien terrorists, and § 440(d), denying relief for aliens convicted of ordinary crimes.

The Attorney General's argument both misinterprets *Landgraf* and fails on its own terms. The argument misinterprets *Landgraf* because it effectively would apply a presumption in favor of retroactive application to any restriction of relief that could be described as "discretionary." The argument fails to recognize that "the only 'presumption' mentioned in that opinion is a general presumption *against* retroactivity." *Hughes Aircraft*, —— U.S. at ——, 117 S.Ct. at 1878. Following the Attorney General's position would have significant consequences. It would require Congress to draft an explicit "effective date" provision to ensure against retroactive application in any case in which a statute takes away relief to which a party was not automatically entitled. But *Landgraf* requires an express congressional command only to overcome its presumption against retroactivity, not to ensure application of a statutory term prospectively. *See Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2062, 138 L.Ed.2d 481 (1997).

Indeed, in *Landgraf* itself a similar argument was made and rejected by the Supreme Court. *Landgraf* refused to apply amendments to Title VII that enlarged the damages that could be awarded to victims of discrimination retroactively, despite the fact that the employer would only face liability if he engaged in conduct that was at the time illegal. "Even when the conduct in question

is morally reprehensible or illegal, a degree of unfairness is inherent whenever the law imposes additional burdens based on conduct that occurred in the past." *Landgraf,* 511 U.S. at 282–83 n. 35, 114 S.Ct. at 1506 n. 35. Similarly, in *Hughes Aircraft,* the Court again rejected an argument that a statute is not retroactive if the conduct for which it imposes additional consequences was already unlawful, and thus the defendant had no "right" to engage in such conduct. The *Hughes Aircraft* Court nevertheless determined that the unfairness of imposing "additional burdens" on such conduct retroactively invoked the *Landgraf* presumption. *See id.* at ——–——, 117 S.Ct. at 1876–77. Thus, that Goncalves' crimes made him deportable prior to the passage of AEDPA and that the new restrictions merely eliminated a possible form of relief from those consequences, do not suffice to rebut the presumption against retroactivity.

Similarly, the Attorney General's reliance on a description in *Landgraf* of the kinds of statutes that often provoke retroactivity concerns is misplaced. In *Landgraf,* the Court noted, with approval, Justice Story's "influential definition" of impermissibly retroactive statutes:

> Every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.

*Landgraf,* 511 U.S. at 269, 114 S.Ct. at 1499 (citations and internal quotation marks omitted). In *Hughes Aircraft,* however, the Court expressly held that this language "does not purport to define the outer limit of retroactivity;" that such effects on what may be considered "vested rights" "constitute[ ] a

*sufficient,* rather than a *necessary,* condition for invoking the presumption against retroactivity." 520 U.S. at ——, 117 S.Ct. at 1876. The Attorney General's reliance on the fact that aliens have no "vested right" to discretionary relief thus "simply misreads [the Court's] opinion in *Landgraf,*" *id.,* converting it from an opinion urging against retroactive application to an opinion requiring special congressional attention to *avoid* retroactive application. Although crimes "involving moral turpitude" did expose Goncalves to deportation before AEDPA, he had a statutory right to apply for § 212(c) relief unless he had committed an aggravated felony. To preclude Goncalves from applying for such relief now plainly "attaches a new disability" and imposes additional burdens on past conduct. *Hughes Aircraft,* 520 U.S. at ——, 117 S.Ct. at 1876 (quoting *Landgraf,* 511 U.S. at 269, 114 S.Ct. at 1499).

Even if Supreme Court precedent permitted this type of analysis, which it does not, the Attorney General's argument fails on its own terms. She says that the reason alien terrorists are subject to a specific retroactivity provision applying the new restrictions to pending applications (and criminal aliens are not) is that the forms of relief that AEDPA precludes for alien terrorists were not discretionary. In this, the Attorney General misreads the statute.

Alien terrorists had been eligible for certain forms of discretionary relief, and Congress nevertheless provided expressly for application of the new restrictions on these forms of relief to pending applications. Of the five forms of relief from deportation precluded by § 413, only one, "withholding of deportation," is a form of relief to which an alien is entitled if eligible. The rest were committed to the discretion of the Attorney General.[24] Thus, except for the relief pre-

---

24. The forms of relief that are precluded by § 413, applicable to alien terrorists, include "withholding of deportation" under old INA § 243(h)(1) (entitling an alien who is "likely" to face persecution in his home country to relief from deportation), and "suspension of deportation" under old INA § 244(a) (giving discretion to the Attorney General to suspend deportation in certain circumstances causing "exceptional and extremely unusual hardship" to close family members). In addition, AEDPA § 413 makes

aliens involved in terrorism ineligible to apply for "voluntary departure" under old INA § 244(e)(1) (giving discretion to the Attorney General in certain circumstances to allow deportable aliens to leave the country voluntarily and thus avoid the negative legal consequences of formal deportation). They are also made ineligible to adjust their status from a nonimmigrant status to that of an alien lawfully admitted for permanent residence under old INA § 245(a), which is a discretionary form of relief, or to

cluded by AEDPA § 413(a), all of the relief precluded by § 413 was discretionary relief. The fact that § 413 contains an "effective date" subsection that applies to the entire section suggests that Congress thought it was necessary to be explicit in making the new restrictions applicable to pending applications for relief, regardless of whether the relief was discretionary or mandatory; otherwise, the retroactivity provision would not be needed.

Finally, in another section, Congress explicitly made a restriction on discretionary relief retroactive through an express "effective date" provision. *See* AEDPA § 421. As that section concerns only asylum applications, under the Attorney General's reading no "effective date" provision would be needed because asylum is a discretionary form of relief. *See Cardoza–Fonseca,* 480 U.S. at 428–29 & n. 6, 107 S.Ct. at 1211–12 & n. 6. Thus, § 421 confirms our reading; Congress did not draft express retroactivity provisions only for mandatory forms of relief.

Thus, Congress expected, unless it said to the contrary, that new restrictions would not be applied retroactively to pending applications. This is the most natural reading of Congress' decision to include language in §§ 413 and 421 making the new restrictions applicable to the pending applications of alien terrorists, but omitting such language in § 440(d), the provision denying relief to aliens convicted of specified criminal offenses. Furthermore, Congress did not treat discretionary restrictions on relief differently than restrictions on other forms of relief. The Attorney General offers no other alternative explanation for the different language that the statute uses in dealing with these two categories of alien offenders.

Our interpretation is eminently rational when tested in light of Congress' principal purposes in enacting AEDPA. Those purposes are announced in the Act's title—preventing terrorism and providing for an "effective" death penalty. *See* AEDPA § 1. Congress could well have decided that the unfairness of upsetting settled expectations

was outweighed by the importance of fighting terrorism, while deciding against making retroactive the new restrictions on § 212(c) relief for aliens who are not terrorists but are convicted of ordinary crimes.

## C. Legislative History

We examine AEDPA's legislative history to determine whether we have erred in our interpretation of the text. *See Landgraf,* 511 U.S. at 262, 114 S.Ct. at 1495 (permitting resort to legislative history to confirm textual analysis); *Cardoza–Fonseca,* 480 U.S. at 432–33, 107 S.Ct. at 1213–14; *Rivera,* 131 F.3d at 226. We do so only to determine if there is a clearly expressed legislative intention contrary to our textual reading, not as a substitute for a textual analysis. *See Rivera,* 131 F.3d at 226. The history of AEDPA, far from demonstrating a clearly expressed contrary intent, further demonstrates Congress' attention to "effective date" provisions and thus supports our reading of AEDPA's text.

One of the most striking things about the legislative history is that the original Senate version of the bill which became AEDPA did contain express language making the provision which became AEDPA § 440(d) retroactive; but this language was eliminated by the conference committee and was *not* included in the final bill. The origins of § 440(d) were in 1995, when Senators Dole and Hatch and several co-sponsors introduced the restriction on § 212(c) relief that became AEDPA § 440(d). The restriction was introduced as part of an amendment in the nature of a substitute for their own antiterrorism bill, S. 735, 104th Cong. (1995) (the "Senate bill"). *See* 141 Cong. Rec. S7553 (daily ed. May 25, 1995) (text of amendment). That amended Senate bill, at § 303(e)(4), contained the provision that later became AEDPA § 440(d), limiting relief for aliens convicted of ordinary crimes. Within that section, § 303(f) then provided:

> The amendments made by this section [i.e., § 303 of the Senate bill] shall take effect on the date of the enactment of this Act

apply to have their admission to this country recorded as lawful, despite the lack of such a record, if they were admitted prior to certain

dates under old INA § 249, also a form of relief that is committed to the discretion of the Attorney General.

and shall apply to cases pending before, on, or after such date of enactment.

141 Cong. Rec. S7559 (daily ed. May 25, 1995). Thus, the amended Senate bill contained an "effective date" provision, expressly applicable to what later became AEDPA § 440(d), which provided for retroactive application of its restrictions on § 212(c) relief.[25] The language is strikingly similar to what later became AEDPA § 413, the provision restricting relief for alien terrorists. The full Senate passed this version of the Senate bill on June 7, 1995. *See* 141 Cong. Rec. S7857, S7863 (daily ed. June 7, 1995).

Meanwhile, the House of Representatives was considering a different version of the antiterrorism bill, H.R. 2703, 104th Cong. (1996) (the "House bill"). Like the Senate bill, the House bill contained provisions restricting relief from deportation both for terrorists and for aliens convicted of ordinary crimes. However, in the case of ordinary crimes, the House bill only eliminated § 212(c) relief for aliens convicted of more serious crimes and was prospective.[26] *See* H.R. 2703, 104th Cong. § 662 (1996), at 142 Cong. Rec. H2295 (daily ed. Mar. 14, 1996). By contrast, the House bill, like the final legislation, contained explicit "effective date" subsections in its provisions limiting relief for alien terrorists which made those restrictions retroactive. *See* H.R. 2703 §§ 611(b), 612(f), at 142 Cong. Rec. H2293, H2294 (daily ed. Mar. 14, 1996) (House bill provisions corresponding to AEDPA §§ 421(b) and 413(g), respectively). When the Senate bill was called up on the House floor on March 14, 1996, the House amended the Senate bill by replacing its text with the text of the House version. *See* 142 Cong. Rec. H2268, H2304 (daily ed. Mar. 14, 1996). The House asked

for a conference with the Senate, insisting on its version of the legislation. *See id.* at H2304.

One month later, a bipartisan conference committee emerged with a compromise in the form of AEDPA § 440. The legislation contained both the House bill's expanded definition of "aggravated felony" and the Senate bill's restrictions on § 212(c) relief for aliens convicted of ordinary "crimes involving moral turpitude," but notably did not contain the Senate bill's original language making those restrictions retroactive. *See* H.R.Rep. No. 104–518, at 119 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 952 (adopting § 303(e)(4) of the Senate bill without adopting § 303(f), the subsection that made those restrictions applicable to pending cases). The legislation also contained the House version of the provisions eliminating relief for alien terrorists, and the House language making *those* provisions retroactive. A contrast in statutory language is "particularly telling" when it represents a decision by a conference committee to resolve a dispute in two versions of a bill, and the committee's choice is then approved by both Houses of Congress. *See FEC v. NRA Political Victory Fund,* 513 U.S. 88, 95, 115 S.Ct. 537, 541–42, 130 L.Ed.2d 439 (1994).

This chronology also illustrates a second important point: Congress' awareness of the issue of whether restrictions on relief should be applied retroactively. In the final legislation, Congress decided to provide for such retroactive application in §§ 413 and 421, but not in § 440(d), a position consistent with the House approach of treating the two categories of aliens differently with respect to AEDPA's temporal reach. " 'Few princi-

---

**25.** The fact that the Senate bill contained such a subsection is a telling refutation of the Attorney General's argument that the Congress did not believe that such a subsection was necessary for provisions limiting discretionary relief.

**26.** The House bill's provisions limiting relief for aliens convicted of ordinary crimes had its origins in H.R. 668, the "Criminal Alien Deportation Improvements Act of 1995." H.R. 668 was included as subtitle E of title VI of the House bill, H.R. 2703. The House version restricted relief by expanding the definition of "aggravated felony," which under old INA § 212(c) made an

alien ineligible to apply for such relief. *See* H.R. 2703, 104th Cong., § 662, at 142 Cong. Rec. H2295 (daily ed. Mar. 14, 1996). The House bill was crafted to eliminate the availability of § 212(c) relief for violent and other serious offenders. *See* H.R. Rep. 104–22, at 7–9 (1995). The House bill did not eliminate § 212(c) relief for permanent residents who committed less serious crimes that might nevertheless be said to "involve moral turpitude." Thus, under the House bill, Goncalves' application for discretionary relief would still be heard by the BIA.

ples of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language.'" *Rivera,* 131 F.3d at 227 (quoting *Cardoza–Fonseca,* 480 U.S. at 442–43, 107 S.Ct. at 1218–19); *cf. Lonchar v. Thomas,* 517 U.S. 314, 325–27, 116 S.Ct. 1293, 1300, 134 L.Ed.2d 440 (1996) (courts should not read habeas statute to impose a requirement that Congress expressly *"rejected,* by removing [it] from the draft Rule"). Adopting the Attorney General's interpretation would require us to do precisely that, upsetting a compromise provision that was intended to reconcile the House's and Senate's very different approaches to aliens convicted of crimes.

▮ A third point emerges from the legislative history. We note that Congress amended AEDPA § 440(d) when it enacted IIRIRA on September 30, 1996. *See* IIRIRA § 306(d). Three months earlier, on June 27, the BIA had determined that Congress did not intend AEDPA § 440(d) to apply to pending cases. Significantly, the very same Congress that had enacted AEDPA just five months earlier, on April 24, did not take the opportunity to overrule that BIA decision by providing expressly that the new restrictions were fully retroactive and applied to pending cases. This was true even though Congress specifically amended AEDPA § 440(d) in other respects and was presumptively aware of what was then the governing agency interpretation. *Cf. Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (citations omitted)). Such subsequent legislative developments, although never determinative in themselves, can be "significant" clues to congressional intent. *See Cardoza–Fonseca,* 480 U.S. at 430, 107 S.Ct. at 1212; *Sweet Home Chapter,* 515 U.S. at 700–01, 115 S.Ct. at 2414–15. This is particularly so when the amendment to AEDPA § 440(d) was enacted by the same Congress and was enacted after an agency had interpreted the statute in a way which would have required a more explicit statutory statement if Congress

intended the statute to be interpreted differently. *Cf. Cardoza–Fonseca,* 480 U.S. at 430, 107 S.Ct. at 1212 (relying on the actions of *subsequent* congresses as clues to legislative intent); *Sweet Home Chapter,* 515 U.S. at 700–01, 115 S.Ct. at 2414–15 (same); *Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 6–7 (1st Cir.1996).

"We find these ordinary canons of statutory construction compelling, even without regard to the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *Cardoza–Fonseca,* 480 U.S. at 449, 107 S.Ct. at 1222. A careful reading of the text of AEDPA, confirmed by an examination of its legislative history, demonstrates that Congress did not intend AEDPA § 440(d) to apply retroactively to pending applications for § 212(c) relief by persons convicted of ordinary "crimes involving moral turpitude."

## V. Conclusion

Despite the length of this opinion, our holding is narrow. The district court had jurisdiction over Goncalves' petition for a writ of habeas corpus under 28 U.S.C. § 2241 given the precise nature of the claims asserted. The scope of that habeas jurisdiction is not limited to constitutional claims, but encompasses at least the pure issues of law concerning the applicability of statutory provisions to pending cases which Goncalves has raised. We have rejected an argument that there is no jurisdiction to consider these pure issues of law merely because Goncalves is not entitled to relief from deportation. Rather the question is whether he is entitled to be considered for such relief, and we have determined that he is. However, we need not reach the issue of what review (if any) may be available on habeas in cases when an alien attempts to obtain review of an individual § 212(c) or "cancellation of removal" determination by styling it as a pure issue of law, except to note that Congress apparently intended the scope of such review, if any, to be narrower than the "abuse of discretion" review that was formerly available under old INA § 106, at least for aliens subject to the permanent rules.

We have also determined, through a careful reading of AEDPA's text, confirmed by its legislative history, that Congress did not intend AEDPA § 440(d) to apply retroactively to persons in Goncalves' position. We do not reach Goncalves' constitutional challenges.

The judgment of the district court is *reversed,* and Goncalves' petition for a writ of habeas corpus is *granted* to this extent: the case is *remanded* to the Board of Immigration Appeals for a discretionary determination of the merits of Goncalves' application for relief under old INA § 212(c). It is, of course, up to the Attorney General, through the BIA, whether to exercise her discretion to allow Goncalves to avoid deportation.