Jose CEDILLO–GONZALEZ

v.

Luis GARCIA, District Director,
Immigration and Naturalization
Service.

No. EP–98–CA–465–DB.

United States District Court,
W.D. Texas,
El Paso Division.

March 2, 1999.

**480**

Linda Y. Chew, El Paso, TX, for Petitioner.

Jose J. Tavarez, El Paso, TX, for Respondent.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Jose Cedillo–Gonzalez's ("Petitioner") Petition for Writ of Habeas Corpus filed on November 13, 1998, in the above-captioned cause. The Government ("Respondent") filed its Opposition and Response to Petition for Writ of Habeas Corpus and Motion to Dismiss for Lack of Subject Matter Jurisdiction on January 20, 1999. On January 25, 1999, Petitioner filed his Response to Respondent's Opposition and Response to Petition for Writ of Habeas Corpus and Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction. After due consideration, the Court is of the opinion that Respondent's Motion to Dismiss should be granted for the reasons that follow.[1]

### Facts

Petitioner, a 37 year old citizen of Mexico, entered the United States from Mexico on July 2, 1981, as an immigrant, and was admitted as a lawful permanent resident. He was then 16 years old and has lived in the United States continuously since. On

1. The Court first addresses three collateral matters. First, Respondent refers to "Attachment 7" in its Response; however, its Response contains no such attachment. Therefore, the Court strikes all references to "Attachment 7."

Second, the Court instructs attorneys for Respondent to be more mindful of the page limit for briefs, as provided in Local Court Rule CV–7(d). Rule CV–7(d) provides in relevant part that, "[t]he response is limited to ten (10) pages unless otherwise authorized by the Court." While the Court acknowledges that it granted such leave when Respondent filed its Response on January 19, 1999, the Court may not be so generous in the future. To the Court's dismay, the Response is twenty-two pages long with many gaps between paragraphs.

Lastly, counsel for Petitioner alerted the Court to a statement in Respondent's Response contained in a footnote at page 10. There, Respondent cites an unpublished decision, *Mariscal–Ruiz v. INS*, No. 98–60504 (5th Cir. Nov. 25, 1998), which has no discernable bearing to this cause, except that Petitioner's counsel represented the respondent/appellant in that case during the administrative proceedings. In the footnote, Respondent indicated that the Fifth Circuit reprimanded "petitioner's counsel" for mischaracterizing prior opinions of the Fifth Circuit and other courts. Petitioner's counsel, however, was not involved with the proceedings in *Mariscal–Ruiz* before the Fifth Circuit. The Court agrees with Petitioner's counsel that Respondent's reference to that decision and, in particular, to the reprimand, was uncalled for. The Court, therefore, strikes the footnote in its entirety. The Court cautions Respondent that it will not tolerate demeaning and otherwise pointless references in the future and that appropriate sanctions may issue if such references are made.

October 25, 1989, Petitioner was convicted in the 244th Judicial District Court of Ector County, Texas, for possession of cocaine. He was sentenced to six years probation and fined $300 plus court costs.

As a result of Petitioner's conviction, the Immigration and Naturalization Service (Respondent) initiated deportation proceedings against him on December 11, 1995, by issuing an Order to Show Cause, which charged him with deportability for a conviction of a violation of law relating to a controlled substance under the Immigration and Nationality Act of 1952 ("INA") § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i).

The first hearing on the Order to Show Cause held before an immigration judge occurred on January 22, 1996. On April 8, 1996, Petitioner admitted the allegations contained in the Order to Show Cause and conceded deportability. Petitioner then filed an application for a waiver of deportability pursuant to INA § 212(c) on June 14, 1996. A hearing on the merits of the application was set for September 6, 1996.

Some time after the Order to Show Cause issued and before the September 6 hearing, the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") was enacted. The AEDPA's enactment predates Petitioner's application for a § 212(c) waiver. Section 440(d) of AEDPA amended INA § 212(c). Prior to the AEDPA's enactment, INA § 212(c) provided for a form of discretionary relief from deportation for long-time lawful permanent residents of the United States. The AEDPA does not indicate whether it is to be applied retroactively or only prospectively.

At the September 6 hearing, an immigration judge found petitioner deportable as charged, and found him ineligible to apply for a § 212(c) waiver because, under

§ 440(d) of the AEDPA, he was convicted of a controlled substance violation. Petitioner appealed to the Board of Immigration Appeals ("BIA").

On August 19, 1997, the BIA dismissed Petitioner's appeal. Citing AEDPA § 440(d) and *Matter of Soriano,* Int. Dec. No. 3289 (A.G. Feb. 21, 1997),[2] the BIA noted that Petitioner was statutorily ineligible for a § 212(c) waiver due to his deportability under INA § 241(a)(2)(B). The decision also provided written notice that Petitioner could move to reopen his case for the limited purpose of contesting deportability.

On August 27, 1997, Petitioner made a written request to the BIA to reopen his deportation proceedings on the basis that he had conceded deportability prior to April 24, 1996, in reliance on the availability of § 212(c) relief. On October 27, 1997, the BIA reopened Petitioner's contest of deportability in accordance with *Soriano;* however, the BIA found Petitioner deportable as charged and dismissed Petitioner's appeal for the second time. This petition for writ of habeas corpus followed.

### Discussion

In his petition, Petitioner argues that the orders of the immigration judge and the BIA denying Petitioner the opportunity to apply for relief under § 212(c), on the basis that the AEDPA's changes to that section apply to his case, "constitute a misrepresentation and misapplication of the statutory provisions involved." Thus, he charges that the order of deportation is legally invalid. Alternatively, Petitioner contends that even if Respondent's interpretation and application of the statutory changes is legally correct, the order of deportation still is invalid because the statutes upon which it is based, on their face or as interpreted and applied to Petitioner, violate his right to equal protection under the Fifth Amendment to the United States Constitution. Petitioner additionally ar-

**2.** In *Soriano,* the Attorney General concluded that AEDPA applied retroactively to pending cases.

gues that Respondent "has engaged in a course of conduct in the administrative proceedings which is fundamentally unfair and unjust, and which violates Petitioner's right to procedural due process of law as guaranteed by the Fifth Amendment . . . ." Petitioner posits that the Court has jurisdiction over this matter pursuant to Article I, Section 9, Clause 2 of the United States Constitution;[3] to 28 U.S.C. § 2241;[4] and to the All Writs Act, 28 U.S.C. § 1651.[5]

Respondent counters that the Court lacks jurisdiction to consider Petitioner's challenge to his final order of deportation pursuant to recent changes in immigration law. Respondent further argues that, even if the Court were to have jurisdiction, the petition should be dismissed because Petitioner has not shown a constitutional error resulting in a fundamental miscarriage of justice. Finally, Respondent contends that even if the Court finds it has jurisdiction, Petitioner's claims have no merit. The Court addresses Respondent's arguments in turn below.

### Statutory Background

Recently, Congress has taken dramatic steps to limit the federal courts' jurisdiction over petitions for habeas corpus involving INS matters. To begin, Congress enacted the AEDPA on April 24, 1996, which curtailed judicial review over deportation proceedings. Prior to the en-

actment of the AEDPA, however, judicial review of deportation orders typically proceeded by a Petition for Review of the INA decision filed in the court of appeals. *See Sandoval v. INS,* 166 F.3d 225, 228 (3d Cir.1999). INA § 106(a)(10) also provided for review of a deportation order by way of a habeas corpus proceeding.

The INA statutory landscape changed significantly when AEDPA § 401(e) deleted INA § 106(a)(10), through AEDPA § 440(a). Section 440(a), codified at 8 U.S.C. § 1105a(a)(10), replaced INA § 106(a)(10) with the following language: "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense [covered in the deportation provisions of the INA] shall not be subject to review by any court."

These provisions changed again several months later with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA") on September 30, 1996.[6] The IIRIRA contains two different sets of rules: the permanent rules, which became effective on April 1, 1997, *see* IIRIRA § 309(a), and the transitional rules, which became effective on October 30, 1996. The transitional rules apply to aliens who were placed in removal proceedings before April 1, 1997.[7]

---

**3.** Article I, Section 9, Clause 2, of the Constitution provides that, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

**4.** 28 U.S.C. § 2241 provides in relevant part that,

(c) The writ of habeas corpus shall not extend to a prisoner unless—
(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He is in custody in violation of the Constitution or laws or treaties of the United States;

\* \* \* \* \* \*

**5.** The All Writs Act provides in relevant part that, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

**6.** IIRIRA § 306(b) repealed 8 U.S.C. § 1105a as to deportation proceedings initiated on or after April 1, 1997. *See* IIRIRA §§ 306(b), (c), and 309. For such proceedings, the IIRIRA substitutes new judicial review provisions. *See* IIRIRA § 306(a).

**7.** Technical amendments enacted on October 11, 1997, Pub.L. 104–302, 110 Stat. 3656,

Transitional rule IIRIRA § 309(c)(4)(G), provides in relevant part:

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(I) of such Act (as so in effect).

Because Petitioner's deportation proceedings were initiated before April 1, 1997 and his appeal was dismissed by the BIA after October 30, 1996, transitional rule IIRIRA § 309(c)(4)(G) applies here.

Finally, IIRIRA § 306(a) amends INA § 242(g), 8 U.S.C. § 1252(g), and provides that,

> [e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Whether the amended INA § 242(g) applies to Petitioner is not dispositive, because, as explained in greater detail below, the Court finds it retains jurisdiction to review this cause under any of the apparent jurisdiction-limiting provisions of the AEDPA and the IIRIRA. *See Sandoval,* 166 F.3d at 237 (concluding that, "because neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. § 2241 ... § 2241 survives the 1996 amendments."); *c.f. Hilario Perez v. Reno,* 18 F.Supp.2d 674, 680 and n. 4

3657, clarify the permanent and transitional

(W.D.Tex.1998) (finding that the amended INA § 242(g) does not apply under similar circumstance, but also indicating that "[w]hether new INA § 242(g) is applicable is inconsequential to the jurisdiction question at hand.") (citing *Goncalves v. Reno,* 144 F.3d 110, 122 (1st Cir.1998)); *Farquharson v. INS,* 1999 WL 9662, *5 (D.N.J. Jan.6, 1999) (assuming that § 1252(a)(2)(C) applies only because this section contains more restrictive language, reasoning that if the court finds it has jurisdiction under this section, which it did, then "jurisdiction most certainly exists under the arguably less stringent transitional provision").

Section 440(d) of the AEDPA expanded the category of criminal convictions that would render an alien ineligible to apply for § 212(c) relief. AEDPA § 440(d) (as amended by IIRIRA § 306(d)) amended INA § 212(c) and reads:

> This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in [INA] § 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(ii).

In particular, AEDPA § 440(d) amended INA § 212(c) to render aliens, like Petitioner, convicted of an aggravated felony under INA § 241(a)(2)(A)(iii) (now codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii)), ineligible for § 212(c) relief. With this intricate statutory background in mind, the Court proceeds to the issues now before it.

### Jurisdiction

 Respondent asserts that the AEDPA and the IIRIRA deprive district courts from habeas jurisdiction to review Petitioner's challenges to his final order of deportation. The Court does not agree.

Some six circuit courts have addressed the issue of habeas jurisdiction under similar facts. Four of the circuit courts reject-

rules.

ed Respondent's position, while two have adopted it. For instance, in *Goncalves v. Reno*, 144 F.3d 110, 123 (1st Cir.1998), the First Circuit reversed the district court's dismissal of an alien's habeas petition, finding that Congress did not eliminate habeas jurisdiction under § 2241 because Congress did not express an intent to do so.

In *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998), the Second Circuit similarly affirmed the decisions of two district courts that found they had jurisdiction under § 2241 to grant writs of habeas corpus to deportable aliens. The Second Circuit relied on its earlier decision, *Jean–Baptiste v. Reno*, 144 F.3d 212, 220 (2d Cir. 1998), in which it affirmed the dismissal of an alien's Petition for Review.[8] In *Jean–Baptiste*, the court held that the elimination of judicial review by the new amendments did not violate the Constitution because § 2241 habeas review remained. *See id.*

Likewise, the Ninth Circuit held in *Magana–Pizano v. INS*, 152 F.3d 1213, 1216 (9th Cir.1998) (per curiam), that the district court retained habeas jurisdiction under § 2241 to hear the claim of an alien who had committed a drug offense. Reasoning that if it read the IIRIRA as eliminating all judicial review of executive detention, such an interpretation would violate the Suspension Clause. *See id.* at 1220. The Ninth Circuit previously held in *Hose v. INS*, 141 F.3d 932, 936 (9th Cir.1998), that the IIRIRA eliminated district court jurisdiction to hear a habeas petition by an alien seeking to appeal an immigration judge's determination that he was excludable. The court noted that the Suspension Clause was not violated because Hose could have filed a Petition for

Review in the court of appeals, an option not available to Magana–Pizano. *See id.* On December 2, 1998, the Ninth Circuit granted a rehearing en banc and *withdrew* the *Hose* opinion. *See Hose v. INS*, 161 F.3d 1225 (9th Cir.1998).

More recently, the Third Circuit in *Sandoval* opined that district courts maintain § 2241 jurisdiction. There, the court concluded that § 2241 survives the 1996 amendments "because neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. § 2241 . . . ." *Id.* at *15; *accord Henderson*, 157 F.3d at 120 n. 11; *Magana–Pizano*, 152 F.3d at 1221; *Jean–Baptiste*, 144 F.3d at 219; *Goncalves*, 144 F.3d at 123.

While the Court of Appeals for the District of Columbia has not addressed this issue, a district court in that circuit has held that the AEDPA and the IIRIRA do not deprive it of jurisdiction under 28 U.S.C. § 2241 to hear a similar claim by an alien. *See Lee v. Reno*, 15 F.Supp.2d 26, 37–40 (D.D.C.1998).

On the other hand, two Courts of Appeals have concluded otherwise. In *Richardson v. Reno*, 1998 WL 850045 (11th Cir.1998), *opinion vacated and superseded*, 162 F.3d 1338, 1359 (11th Cir.1998), the Eleventh Circuit found that the IIRIRA's amendment to INA § 242(g) eliminated habeas jurisdiction under § 2241 and did not violate the constitution. Although the petitioner in *Richardson* was an alien who was detained upon re-entry into the United States, and therefore the facts there were different, the case otherwise involved the same statutory provisions and relevant legal principles.

---

**8.** In dictum, however, the Second Circuit expressed some reluctance in finding that district courts had jurisdiction under § 2241, as follows:

[w]ere we not bound by *Jean–Baptiste*, the members of this panel would ·be strongly inclined to find that the proper mechanism for judicial review is by petition for review

in the courts of appeals, rather than by § 2241 habeas in the district courts. Neither approach is without problems in terms of the text and legislative history, but review in the courts of appeals seems more consistent with congressional intent.

*Henderson*, 157 F.3d at 119 n. 9.

After the Eleventh Circuit ruled in *Richardson,* the Seventh Circuit followed with *LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir.1998). The Seventh Circuit agreed with the finding that AEDPA § 440(a) deprives the district courts of habeas jurisdiction with respect to the executive's detention of aliens who have been convicted of enumerated crimes. *Id.* at 1039. The court read the statute as allowing such aliens to bring constitutional challenges to their detention in the courts of appeals by way of a petition for review, in spite of the general bar to petitions for review in the AEDPA. The court adopted this construction because of a "presumption that executive resolutions of constitutional issues are judicially reviewable." *Id.* at 1040

To be sure, the Fifth Circuit has suggested that some form of habeas review exists, but it is not clear if such review is proper under § 2241. *See Lerma de Garcia v. INS,* 141 F.3d 215, 217 (5th Cir.1998) (noting that the Fifth Circuit has held that criminal deportees may apply for writs of habeas corpus); *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997) (same); *Williams v. INS,* 114 F.3d 82, 84 (5th Cir.1997). Thus, the Fifth Circuit has recognized that "limited opportunity to apply for a writ of habeas corpus may remain" for aliens facing deportation. *Williams,* 114 F.3d at 84 (noting similar conclusions by the First, Second, Third, and Ninth Circuits). "[A]t a minimum," the Fifth Circuit has stated recently, such aliens may bring the writ protected by the Suspension Clause. *Id.*

All told, the Court finds the opinions of the First, Second, Third, and Ninth Circuits persuasive, because the 1996 amendments do not exhibit a clear intent to eliminate § 2241 jurisdiction from the district courts. Consequently, the Court holds that it does have jurisdiction, at most, under § 2241, and, at the very least, under the Suspension Clause, to review the matter at hand, so long as the issues

for review lie within the jurisdiction's scope.[9]

## Scope of Review

■ Having ruled that it has some degree of jurisdiction under § 2241 and, certainly, under the Suspension Clause to consider this matter, the Court must now address the scope of such jurisdiction. Respondent avers that, even if the Court maintains jurisdiction, the petition should be dismissed because Petitioner has not shown a constitutional error resulting in a fundamental miscarriage of justice, which Respondent contends is the only basis for which the Court can assert jurisdiction. Again, the Court disagrees.

Because the Fifth Circuit expressly has declined to establish the bounds of habeas review in the context of challenges to the AEDPA and the IIRIRA, it appears to be an open question in this circuit. *See Williams,* 114 F.3d at 84 (indicating, "[h]owever, this case does not require us to explore the perimeters of judicial review remaining available"); *see also Humphries v. Various Federal USINS Employees,* 164 F.3d 936, 942 n. 6 (5th Cir.1999) (stating, "[w]e express no opinion on the extent to which other federal statutes (most notably 28 U.S.C. § 2241) might limit the application of § 1252(g).''). The Court, therefore, looks to other circuit courts for guidance.

Recently, the Third Circuit in *Sandoval* ruled that § 2241 contemplates review of a statutory claim. 166 F.3d 225, 1999 WL 31489 at *15. The court reasoned that the very language of § 2241 encompasses claims that one "is in custody in violation of the Constitution or law or treaties of the United States." *Id.; accord Henderson,* 157 F.3d at 122 (2d Cir.) (indicating that statutory claims "affecting the substantial rights of aliens of the sort the courts have secularly enforced" are reviewable on habeas); *Goncalves,* 144 F.3d at 124–25 (1st Cir.) (stating, "the pure statutory claims

9. If jurisdiction is proper under § 2241, then it certainly is proper under the Suspension Clause. Either way, the existence and bounds

of the scope of such jurisdiction remains to be determined by the Supreme Court and the Fifth Circuit.

Goncalves makes here are well within precedent interpreting the core habeas protection provided by § 2241."). As the Court finds this reasoning compelling, it holds that the appropriate scope of review here encompasses at least review of the statutory merits of the instant petition and certainly the constitutional claim as well, under either § 2241 or the Suspension Clause. *See Perez*, 18 F.Supp.2d at 682 (finding that *this Court* had jurisdiction to review the statutory merits of that case under the Suspension Clause). The Court further notes that this finding in no way should be construed as delineating the entire breadth of scope of review under § 2241 or the Suspension Clause.[10]

### Section 440(d) Retroactivity

■ Having ruled that the Court's scope of review under § 2241 encompasses statutory review, the Court now considers Respondent's contention that § 440(d) applies to deprive Petitioner from a § 212(c) discretionary waiver of deportation. The issue of whether § 440(d) has a retroactive effect was addressed in *Sandoval*. There, the court concluded "that Congress did

**10.** The Court further agrees with the First Circuit's refusal to apply the very narrow standards of review to habeas petitions in the immigration context that are applied to review of federal and state court convictions under 28 U.S.C. §§ 2254 and 2255. *See Goncalves*, 144 F.3d at 124. "In cases concerning collateral review of state and federal convictions, a prisoner has already had substantial judicial review of his claims .... By contrast, no court, state or federal, has heard [the deportable alien's] claims." *Id.*

**11.** The Court further notes that the Fifth Circuit has not addressed directly whether § 440(d) applies retroactively. However, the Fifth Circuit indicated in dictum that § 440(d) is similar to § 440(a) and that it previously has held that § 440(a) applied to pending deportation cases. *See Hernandez–Rodriguez v. Pasquarell*, 118 F.3d 1034, 1045–46 (5th Cir.1997) (referring to *Mendez–Rosas v. INS*, 87 F.3d 672, 675 (5th Cir.1996) and *Williams v. INS*, 114 F.3d 82, 83–84 (5th Cir.1997)). Thus, the Court does not necessarily read *Hernandez–Rodriguez* as controlling on the issue of § 440(d)'s retroactivity and sees this issue as unresolved in this circuit.

indeed express an intent that AEDPA's amendment to INA § 212(c) should not apply to [§ 212(c) applications] *pending* on the date of enactment ...." *Sandoval*, 166 F.3d at 241 (emphasis added); *accord Henderson*, 157 F.3d at 129–30; *Goncalves*, 144 F.3d at 133.[11]

Here, Petitioner did not file his § 212(c) application until *after* the effective date of § 440(d). As such, the facts here do not fall within the four corners of *Sandoval, Henderson* or *Goncalves*. Consequently, the Court finds that § 440(d) does apply to Petitioner in spite of the fact that the underlying conviction that instigated his deportation occurred before the enactment of the 1996 amendments.[12]

### Equal Protection Claim

Having found that § 440(d) applies to Petitioner, the Court reaches his equal protection challenge. Petitioner avers that AEDPA § 440(d) violates his right to equal protection under the Constitution, because it allegedly treats similarly situated persons differently. The Court disagrees.

**12.** Petitioner argues that because it was not his fault that he did not file his § 212(c) application before the effective date of § 440(d), the Court should rule that § 440(d) does not apply retroactively and allow him to file for a § 212(c) waiver. Petitioner's reasoning seems to be that, because of Respondent's delay, he should not lose the benefit of a § 212(c) waiver where § 440(d) is found to be non-retroactive. Implicit in Petitioner's argument is an accusation that the INS' hold-up was purposeful to ensure he would be barred from applying for the § 212(c) waiver. The Court does not find merit in this argument. Further, the Court sees no useful purpose in engaging in a second-guessing inquiry into the INS' intent. The bottom line is that Petitioner filed his application for a § 212(c) waiver *after* the effective date of § 440(d); therefore, the Court finds that § 440(d) applies to him. *C.f., e.g., Sandoval*, 166 F.3d at 241 (holding that § 440(d) does not apply retroactively to *pending* § 212(c) applications).

The plain language of § 212, which is captioned "Excludable aliens," suggests that § 212(c) applies only to aliens who seek *entry* into the United States. In spite these references to exclusion, "it is well settled that § 212(c) relief also applies to deportation of a lawfully admitted alien with an unrelinquished domicile of seven consecutive years." *Gonzalez v. INS,* 996 F.2d 804, 806 (6th Cir.1993); *see also Ashby v. INS,* 961 F.2d 555, 557 and n. 2 (5th Cir.1992); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976). Accordingly, Petitioner's status as an alien facing deportation does not disqualify him for § 212(c) relief under the common interpretation of that provision.

■ It is undisputed that aliens, like citizens, enjoy equal protection of the laws under the Constitution. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Equal Protection Clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, does not direct that all persons be treated alike. Rather, the Equal Protection Clause instructs that all persons similarly situated be treated alike. *See, e.g., City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). While it is true that the Equal Protection Clause of the Fourteenth Amendment is limited to state action, it is also clear that grossly unreasonable discrimination by the federal government violates the Due Process Clause of the Fifth Amendment. *See, e.g., Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). And although there are two equal protection guarantees in the Constitution, the same standards apply to each. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974).

■ The level of judicial scrutiny applicable in determining whether governmental classifications comply with constitutional equal protection guarantees differs depending on the nature of the classification. Where classifications involve a suspect or quasi-suspect class or impact certain fundamental constitutional rights, scrutiny is heightened. *See, e.g., City of Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254. Other classifications only have to be rationally related to a legitimate government goal to survive a constitutional challenge. *See id.* Indeed, it is difficult to fail this test. *See, e.g., Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (stating that, "[the rational basis inquiry] employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary").

■ The challenged classification made by the BIA here, that aliens outside the United States and seeking admission—excludible aliens, are eligible for § 212(c) relief while aliens inside the United States and seeking to remain here—deportable aliens, is not a suspect or quasi-suspect classification. *See Francis,* 532 F.2d at 272 (applying rational basis test to invalidate BIA's interpretation of statute providing § 212(c) discretionary review for permanent resident alien who temporarily proceeds abroad voluntarily and not under deportation order, but not to non-departing aliens). Therefore, the classification here is subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest. *See id.* (noting that distinctions between different classes of persons "must be reasonable, not arbitrary," and the distinction must have a "fair and substantial relation" to the object of the legislation, so that persons similarly situated are treated alike).

The Seventh Circuit recently addressed this equal protection issue in dictum in *LaGuerre*. There, the court opined that the distinction made between excludable and deportable aliens did have a rational basis and therefore did not violate equal protection guarantees. The court reasoned that,

> [the distinction between excludable and deportable aliens] creates an incentive for deportable aliens to leave the country—which is after all the goal of deportation—without their having to be ordered to leave at the government's expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.

164 F.3d at 1041. The court distinguished the equal protection issue pertaining to § 212(c), faced by the Second Circuit in *Francis*, by indicating that,

> where the government was taking the irrational position that an alien who after coming to the United States had taken a trip abroad and *returned* and was *then* ordered *deported* was entitled to more consideration than one who had *never* taken a foreign trip after coming to the United States. That is different from the situation of an alien who seeks discretionary relief while he is still *outside* the United States.

*Id.* (emphasis added). The Court adopts *LaGuerre*'s basis for rationality and the distinction it makes with respect to *Francis* and, presumably, its progeny,[13] and deems Petitioner's equal protection claim meritless. As such, the Court finds that Congress had a rational basis for distinguishing between excludable and deporta-

ble aliens, as provided under the facts of this cause. *But see Farquharson*, 31 F.Supp.2d at 416, n. 16 (surmising that, "[c]ourts have held, and this court would be inclined to agree, that, for the same reasons enunciated in *Francis*, and adopted by the Third Circuit in [*Katsis v. INS*, 997 F.2d 1067 (3d Cir.1993)], applying AEDPA § 440(d) only to deportable aliens, barring them, but not excludable aliens, from consideration for discretionary waivers violates the equal protection clause."); *DeSousa v. Reno*, 1998 WL 855495, *11–12 (E.D.Pa. Dec.9, 1998) (finding the classification in § 440(d) irrational and arbitrary and not in furtherance of a legitimate governmental interest). Thus, the Court is of the opinion that Respondent's Motion to Dismiss should be granted, as there is no basis for habeas relief.

Accordingly, IT IS HEREBY ORDERED that Respondent's Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that the above-captioned cause is DISMISSED WITH PREJUDICE.

### FINAL JUDGMENT

On this day, the Court entered an Order granting Respondent's Motion to Dismiss, filed on January 20, 1999, in the above-captioned cause. The Court now enters its final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY ORDERED** that Respondent's Motion to Dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

13. Other courts have noted in dicta that § 212(c) discretionary relief could not constitutionally be limited to aliens who have left the country and that the provision has been uniformly extended to apply to deportation proceedings as well. *See Green v. INS*, 46 F.3d 313, 315 n. 3 (3d Cir.1995) (noting, in dictum, that discretionary relief could not constitutionally be confined to aliens who have left the country); *Katsis*, 997 F.2d at 1070 (noting, in dictum, that under case law, discretionary relief may be extended to deportable aliens who have not exited the United States); *Tapia–Acuna v. INS*, 640 F.2d 223, 224–25 (9th Cir.1981) (adopting the *Francis* rationale); *Francis*, at 271–73.

· IT IS FINALLY ORDERED that all other pending motions, if any, are **DENIED AS MOOT.**