Jose N. FERNANDES

v.

IMMIGRATION AND NATURAL-
IZATION SERVICE and
George A. Vose, Jr.

No. 97–630ML.

United States District Court,
D. Rhode Island.

July 28, 1999.

Jose M. Fernandes, pro se.

Timothy P. McIlmail, U.S. Department of Justice, Washington, DC, for Defendant.

Judy Rabinovitz, New York, NY, Randy Olen, Providence, RI, for Amicus American Civil Liberties Union.

*MEMORANDUM AND DECISION*

LISI, District Judge.

Petitioner in this action has filed a claim for habeas corpus relief pursuant to 28 U.S.C. § 2241. On April 30, 1999, this Court ordered Petitioner released from Immigration and Naturalization Service ("INS") custody on conditions which were set forth in the record on that date. This memorandum sets forth the Court's rationale for granting the petition.

## I. FACTS

Petitioner was born in Angola in 1961. At the time of Petitioner's birth and until it gained its independence in 1975, Angola was a colony of Portugal. Petitioner entered the United States as a lawful permanent resident on June 5, 1971. From that date until the present, he has resided in the United States.

On July 5, 1995, Petitioner pled nolo contendere to several drug charges. The charges stemmed from Petitioner's agreement to sell four ounces of cocaine to an undercover detective for $3000. On those charges, Petitioner was sentenced to ten years in prison with all but two years suspended. On an additional simple possession charge, Petitioner was sentenced to three years at the Adult Correctional Institutions (ACI) with two years to serve and the remaining one year suspended. All sentences were to run concurrently.

On October 24, 1995, the INS began deportation proceedings against Petitioner. The INS alleged that Petitioner was deportable by virtue of his convictions for drug trafficking. *See* 8 U.S.C. § 1227. On April 15, 1996, a deportation hearing was conducted at the ACI in Cranston, Rhode Island. At that hearing Petitioner was advised by the INS that he might be eligible for relief from deportation under § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C.A. § 1182(c) (repealed by Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 304(b), Pub.L. No. 104–208, 110 Stat. 3009–597). A hearing was scheduled at the ACI on August 20, 1996, for consideration of Petitioner's application under § 212(c). At that hearing the immigration judge held that Petitioner was not eligible for relief under § 212(c) because any rights he might have had under that provision had been extinguished by the then newly enacted provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 440, 110 Stat. 1214, 1276–77 (enacted on Apr. 24, 1996). Petitioner was then ordered deported to Angola or, in the alternative, to Portugal.

Petitioner completed his prison sentences on September 20, 1996. At that time he was taken into INS custody, however, he remained physically detained without bond at the ACI until he was transferred to another state correctional facility in Plymouth, Massachusetts. Petitioner apparently filed an appeal from the deportation order on September 6, 1996; however, because he had filed his notice of appeal improperly with the INS instead of the Bureau of Immigration Affairs ("BIA"), it was not acted upon. This procedural glitch was rendered moot when on February 10, 1997, Petitioner withdrew his appeal and requested immediate deportation.

Since at least March 1997, the INS, through the United States Department of State, has endeavored to effectuate the order of deportation. The government of Angola has denied Petitioner entry. So too, the governments of Portugal and Cape Verde have refused to accept Petitioner. As of April 1999, the INS conceded that Petitioner's deportation could not be accomplished in the near or foreseeable future.

In the interim, Petitioner filed an administrative appeal from the District Director's decision to deny him bond pending execution of the deportation order. That appeal was timely filed in July 1998, and remains pending.

## II. PROCEDURAL HISTORY

On November 10, 1997, Petitioner filed a petition for writ of habeas corpus and a motion for immediate release in the United States District Court. On February 5, 1998, the INS filed its motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The INS argues that the petition should be dismissed because this Court lacks subject matter jurisdiction and because Petitioner has failed to exhaust his administrative remedies. As to the latter claim, the INS maintains that Petitioner can avail himself of the administrative process to appeal the denial of his request for release pending deportation. As noted above, Petitioner has done so, however, the BIA has yet to rule on Petitioner's application which was filed in July 1998. With respect to its claim that this Court lacks subject matter jurisdiction, the INS contends that recent statutory changes preclude this Court's exercise of jurisdiction over Petitioner's claim.

---

1. Petitioner was initially housed by the INS at the ACI. He therefore named George A. Vose ("Vose") and the State of Rhode Island as defendants in his petition. Vose and the State filed a motion to dismiss on the grounds that Petitioner's detention was pursuant to the INS order. Because Petitioner was held per the INS detainer and not per any State action, the State's and Vose's motion is granted.

This matter was referred to United States Magistrate Judge Jacob Hagopian pursuant to 28 U.S.C. § 636(b)(1)(B). In his report the magistrate judge recommended a denial of the motion to dismiss based on his conclusion that this Court does have subject matter jurisdiction. Magistrate Judge Hagopian further recommended, *sua sponte,* that the matter be remanded to the Bureau of Immigration Affairs for determination on the merits as to whether Petitioner should be afforded relief from deportation pursuant to former § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182, (repeal effective September 30, 1996).

In light of Petitioner's withdrawal of his appeal from the order of deportation and his affirmative request for immediate deportation, this Court need not address the § 212(c) issue raised *sua sponte* by the magistrate judge. This Court does agree with that portion of the report and recommendation which concludes that the Court has jurisdiction to decide whether Petitioner's continued, indefinite detention violates his right to due process under the Fifth Amendment to the United States Constitution.

## III. Discussion

The government advances two arguments in support of its position that this Court lacks jurisdiction to decide Petitioner's claim under 28 U.S.C. § 2241. First, the government argues that the recent enactment of statutory provisions which constrict judicial review in deportation cases precludes this Court's consideration of Petitioner's claim. In this regard, the government points to the recent amendments to the INA in the AEDPA, Pub.L. No. 104–132, 110 Stat. 1214 (enacted on April 24, 1996) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (enacted on September 30, 1996), as amended by Act of October 11, 1997, Pub.L. No.104–302, 110 Stat. 3656.

■ This assertion has been put to rest by a recent decision of the United States Court of Appeals for the First Circuit. In *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), the Court of Appeals held that neither the AEDPA nor the IIRIRA operates to repeal this Court's jurisdiction to hear and decide petitions for habeas corpus relief under § 2241 filed by persons such as Petitioner who have been ordered deported from the United States. *Id.* at 120.

The government's second argument fares no better. The government argues that this Court should decline to hear Petitioner's case because he has failed to exhaust his administrative remedies by taking an appeal from the INS District Director's denial of Petitioner's July 24, 1998 bond request. *See* 8 C.F.R. §§ 3.3(a)(2), 3.5(b) (1999). At oral argument and in its "Supplemental Status Report" filed April 28, 1999, the respondents concede that Petitioner's appeal had been properly and timely filed by Petitioner, but that it had been misdirected by the INS and since July 1998, has languished in bureaucratic limbo, notwithstanding this Court's urging that the respondents expedite processing of Petitioner's appeal.

In *Hermanowski v. Farquharson,* 39 F.Supp.2d 148 (D.R.I.1999), the court considered and rejected the government's exhaustion argument. Unlike Petitioner, Hermanowski had not taken an administrative appeal from the District Director's denial of bail. Chief Judge Lagueux held that "[a]lthough Congress has substantially rewritten much of the federal immigration statutes in recent years, it has not created an exhaustion requirement for judicial review of alien custody claims. Therefore, exhaustion of administrative remedies is not a prerequisite to this Court's invocation of jurisdiction over this habeas corpus request." 39 F.Supp.2d at 154 (citation omitted); *see also Phan v. Reno,* 56 F.Supp.2d 1149, 1152–54 (W.D.Wash.1999).

Because this Court has determined that Petitioner's continued, indefinite detention violates his rights to substantive due process under the Fifth Amendment, the Court need not comment further on the BIA's and INS's mishandling of his administrative appeal and any implications the resultant delay might have on his claim of a denial of procedural due process.

Having now concluded that this Court does have jurisdiction to consider Petitioner's claims for relief, the Court must also consider the scope of its review. At oral argument, the respondent took the position that the correct standard to apply balances a rational relationship between Petitioner's detention and a legitimate government interest, here execution of the deportation order.

The government concedes that Petitioner poses no risk of flight. He has resided in the District since 1971. He has family here and he has prospects for employment in the area. The government argues that Petitioner's continued detention is necessary because he poses a danger to the community. As evidence in support of its position, the government points to Petitioner's past record of convictions for assault and drug dealing.

■ This case stands factually on all fours with *Hermanowski*, 39 F.Supp.2d 148. Indeed, the two cases traveled parallel procedural paths through the district court. In arriving at the conclusion that Petitioner must be set free from detention, this Court relied heavily on the legal analysis set forth in Chief Judge Lagueux's comprehensive and thoughtful opinion issued March 1, 1999.

In *Hermanowski*, the court considered the specific conditions of the petitioner's detention and next, the gravity of the government's concerns regarding the release of the petitioner. *See* 39 F.Supp.2d at 159. In the final step of the analysis, the court measured its findings as to the first two elements against the government's legitimate interests of securing the deportee's presence for execution of the deportation order and protection of the public from further criminal conduct. *See id.* Since the government has conceded that Petitioner poses no flight risk, this Court will address only the government's contention that Petitioner's detention should continue because he poses a threat to the public.

Since September 20, 1996, Petitioner has been detained by the INS. Initially, he was housed at the ACI in Cranston, Rhode Island; during the pendency of this action, he was transferred to another state prison facility in Plymouth, Massachusetts. At the time that this Court ordered his release, Petitioner had been in federal custody for more than thirty months, a term of incarceration that is longer than all previous prison terms imposed on him for criminal behavior. During those thirty-plus months, Petitioner has been detained in two state prisons. "In the real world beyond euphemisms, prison life, whether imposed for punitive or regulatory purposes, is a harsh existence. This detention strikes at the core of the liberty interest protected by the Fifth Amendment." *Hermanowski*, 39 F.Supp.2d at 160 (citations omitted).

Like the situation in *Hermanowski*, Petitioner's term of detention is indefinite. Three countries have refused to accept him and the INS cannot say when, if ever, it will be in a position to deport Petitioner to a country willing to take him. It is readily apparent to this Court that the government's objective has been frustrated by outside forces over which it has little or no control. Thus, the claim that Petitioner's detention serves a legitimate government interest, i.e. that detention here aids the effort to deport him, rings hollow. "Detention by the INS can be lawful only in aid of deportation." *Phan*, 56 F.Supp.2d at 1156.

The INS counters that although Angola, Portugal and Cape Verde have denied entry, it can and will continue its efforts to deport Petitioner to any country that will take him. This Court acknowledges that

the government retains the authority to decide which aliens may be deported and that the detention of such individuals may often be necessary to an orderly and effective exercise of that authority.

The critical inquiry, therefore, is whether an alien's detention is excessive in relation to these government interests. In making this determination, we must necessarily balance the likelihood that the government will be able to effectuate deportation, against the dangerousness of a petitioner and the likelihood that he will abscond if released. In so doing, it becomes clear that as the probability that the government can actually deport an alien decreases, the government's interest in detaining that alien becomes less compelling and the invasion into the alien's liberty more severe.

*Phan*, 56 F.Supp.2d at 1156.

The government argues that Petitioner's past record for assaultive behavior and drug dealing provides a sufficient legal basis to support his continued detention. This Court has reviewed Petitioner's past criminal record. In addition to the drug offenses which precipitated the deportation proceedings, Petitioner was also convicted of three misdemeanor offenses for assault. In 1991, he pled nolo contendere to assaulting a woman and was fined $50 and ordered to pay costs. In 1992, he pled nolo contendere to assaulting the same woman. For this offense he was sentenced to one year of probation with counseling; he was also ordered to pay costs and have no contact with the victim. In 1993, Petitioner pled nolo contendere to assaulting another woman. For this offense he was ordered to pay a $50 fine and court costs.

It is on the basis of these convictions that the government rests its assertion that Petitioner's detention continues to serve a legitimate government objective. As the Court understands the government's argument, since Petitioner was convicted of assault and drug dealing, *a fortiori*, he is dangerous and therefore his continued, indefinite detention is justified and constitutionally permissible.

This argument fails to carry the day for a number of reasons. First, Petitioner's assault and drug convictions do not in and of themselves lead to the inexorable conclusion that Petitioner presents a danger to the community. While the convictions for assault certainly raise concerns as to whether Petitioner may act violently if released, this Court notes that the judges who heard the evidence saw fit to impose probation rather than incarceration. With regard to Petitioner's convictions for drug dealing, from the amounts involved, it appears that Petitioner was a low-level street dealer. For these offenses, Petitioner has paid his debt to society. Presumably, he has been rehabilitated. In this regard the Court takes note of the many certificates of achievement appended to his petition. In particular, those certificates attest to Petitioner's successful completion of a drug abuse treatment program and a course in non-violent conflict resolution.

On balance, given the near-negligible possibility that Petitioner will be deported in the foreseeable future, and the absolute restraint of his personal freedom, his continued detention cannot be said to serve a legitimate government interest. As such, it is excessive and constitutes a violation of his right to liberty as guaranteed under the Fifth Amendment to the Constitution.

For these reasons, and those expressed on the record on April 30, 1999, this Court grants the petition for relief pursuant to 28 U.S.C. § 2241.